David **SCHUMACHER**, Appellant,

v.

Harold **SCHUMACHER**, Respondent.

No. A03–1064.

Court of Appeals of Minnesota.

March 30, 2004.

Douglas A. Boese, Kari C. Stonelake–Hopkins, Dunlap & Seeger, P.A., Rochester, MN, for appellant.

Michael B. Goodman, Goodman & Guzinski, P.A., Rochester, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge, ANDERSON, Judge, and HUDSON, Judge.

## OPINION

STONEBURNER, Judge.

Appellant David Schumacher challenges the district court's grant of summary judgment to respondent Harold Schumacher, claiming that the district court erred in ruling that the Iowa Domesticated Animal Activities Immunity Statute applies to this negligence action to relieve respondent from liability for injuries appellant sustained when respondent's horse kicked him in the face. Appellant argues that Minnesota law applies and, alternatively, that even if the Iowa law applies, there is a genuine issue of material fact regarding whether respondent's conduct was reckless, in which case the Iowa immunity statute would no longer apply. Because we conclude that the Iowa immunity statute applies and there is no genuine issue of material fact regarding whether respondent acted recklessly, we affirm.

## FACTS

Appellant David Schumacher sued his father, respondent Harold Schumacher, for damages due to injuries he sustained when he was kicked in the face by respondent's horse at a horse show in Iowa, while appellant was helping respondent with the horses.

Respondent owns, breeds, raises, and shows Percheron draft horses on his farm near Plainview, in Wabasha County, Minnesota. Percherons are generally known as strong, high-strung animals possessing great speed and agility. An adult Percheron weighs approximately 2,000 pounds and stands 18 hands high.

Appellant was 20 years old at the time of the accident. He grew up helping respondent with the horses. He currently lives in a house owned by respondent and performs work for respondent, including help with showing the Percherons, in lieu of cash rent.

The parties took six geldings and a one-year old stallion to a horse show in Iowa. When they arrived, respondent learned that he had been assigned double-tie stalls, designed to hold two horses. This concerned respondent because his horses are not used to being stalled with another horse. Respondent had never before stabled a stallion with a gelding because stallions generally try to dominate geldings. Nonetheless, while respondent prepared a

separate stall for the stallion, he placed the stallion and one of the geldings in the same stall, separated by a 4x8 piece of plywood. When respondent moved the stallion about ten minutes later, the gelding was upset and agitated because the stallion had bitten and otherwise aggravated him.

Shortly after respondent had moved the stallion, appellant, who knew that the stallion had just been removed from the stall and that the gelding was upset, approached the gelding and was kicked in the face. The manner in which appellant approached the gelding is disputed by witnesses.[1] It is undisputed, however, that appellant suffered severe injuries to the head and has undergone eleven surgeries to reconstruct his face. The costs of appellant's care, to date, exceed $200,000.

Following discovery, respondent moved for summary judgment arguing that Iowa law controls this case and provides him with immunity for negligence, the only cause of action alleged in appellant's complaint. Appellant opposed the motion, arguing that Minnesota law applies and that even if Iowa law applies, respondent's act of placing the gelding and stallion together constitutes recklessness, for which the Iowa statute does not provide immunity. The district court granted summary judgment to respondent, concluding that the Iowa law applies under a choice-of-law analysis, there is no evidence that respondent engaged in reckless conduct, and therefore Iowa's statutory immunity for domesticated animal activities precludes appellant's negligence suit against respondent. This appeal followed, and respondent filed a notice of review on the district court's failure to alternatively dismiss the

case under a primary assumption of the risk theory.

## ANALYSIS

On an appeal from summary judgment, reviewing courts ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). This court views the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (alteration in original). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* at 71. Therefore, a genuine issue for trial must be established by substantial evidence. *Id.* at 69–70.

### I. Choice of law

 A conflict of law exists if choosing the law of one state over the law of another state would be "outcome determinative." *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.,* 590 N.W.2d 670, 672 (Minn.App.1999) (quoting *Myers v. Gov't Employees Ins. Co.,* 302 Minn. 359, 363, 225 N.W.2d 238, 241 (1974)). Iowa Code § 673.2 (2001), provides that "the owner of [a] domesticated animal ... is not liable for the damages, injury, or death suffered by a participant ... resulting from the inherent risks of a domesticated animal activity." The parties agree that, under Iowa law, respondent would not be liable in negligence for appellant's injuries be-

---

1. There is some evidence that appellant may have been poking the gelding with a pitchfork just prior to the kick.

cause the immunity statute applies to the facts of this case. The definition of "domesticated animal" includes a horse. Iowa Code § 673.1 (2001). The meaning of "domesticated animal activity" includes participation in an activity sponsored by a "domesticated animal activity sponsor", which in turn includes a "show." Iowa Code § 673.1.

Minnesota has not enacted a similar immunity statute for owners of domesticated animals. Therefore, choosing to apply Iowa law over Minnesota law is outcome determinative because under the Iowa statute respondent is immune from liability for negligence.

 Choice-of-law questions are questions of law and are reviewed de novo. See Reed v. Univ. of N.D., 543 N.W.2d 106, 107–08 (Minn.App.1996) (framing issue as whether district court erred in its choice-of-law analysis), review denied (Minn. Mar. 28, 1996). Traditionally, when a conflict-of-law issue arises, a court must decide whether the question involves substantive or procedural law by applying the law of Minnesota. Gate City Fed. Sav. & Loan Ass'n v. O'Connor, 410 N.W.2d 448, 450 (Minn.App.1987), review denied (Minn. Oct. 21, 1987). "[S]ubstantive law is that part of the law which creates, defines, and regulates rights." Meagher v. Kavli, 251 Minn. 477, 488, 88 N.W.2d 871, 879–80 (1958). The conflict in this case is substantive because the Iowa law defines and regulates the right of an injured person to seek compensation from the owner of a domesticated animal under the circumstances of this case.

 Minnesota applies a five-factor choice-of-law analysis to determine which state's law applies. Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 469–70 (Minn. 1994). The five choice-influencing considerations are: (1) predictability of result; (2) maintenance of interstate order; (3)

simplification of judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. Id.

### a. Predictability of result

 "This factor addresses whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action." Danielson v. Nat'l Supply Co., 670 N.W.2d 1, 7 (Minn.App. 2003) (emphasis in original), review denied (Dec. 16, 2003). Traditionally, in a tort case, this factor is not of great importance because most accidents are unplanned. Jepson, 513 N.W.2d at 470.

 But this case is distinguishable from a random, unpredictable accident, such as an automobile accident. Here, respondent, who is in the business of raising and showing horses, traveled to Iowa to participate in a horse show for which he paid an entry fee. Appellant came along to assist with handling and showing the horses. The business-related nature of the activity makes this case somewhat more like a contract case, in which predictability of result is recognized to be significant. In choosing to participate in such an activity, it is reasonable that the participants would like to be able to predict their exposure to risk of liability. Application of Iowa law to out-of-state domestic animal owners engaged in a domesticated animal activity in Iowa could affect participation. We conclude this factor weighs in favor of applying the Iowa immunity statute.

### b. Maintenance of interstate order

 This factor addresses whether applying Minnesota law would manifest disrespect for Iowa or impede the interstate movement of people and goods. Jepson, 513 N.W.2d at 471. Evidence of forum shopping or evidence that application

of one state's law would promote forum shopping, would be an attempt to evade, and would indicate disrespect for, Iowa law. *See id.* Minnesota does not encourage forum shopping "because it frustrates the maintenance of interstate order." *Reed,* 543 N.W.2d at 109.

■ The application of Minnesota law in this case would promote forum shopping. An Iowa citizen injured while participating in a domesticated animal activity would be quick to ascertain the state residence of the animal owner and to sue in any state that does not grant immunity to such owners for domesticated animal activities.

By passing the immunity statute, Iowa has stated its public policy interest in encouraging participation in agricultural activities, like this horse show, because such participation benefits Iowa's economy. Applying Minnesota's law in the face of such an economic and public policy would indicate disrespect for Iowa law. Therefore, we conclude that this factor weighs in favor of the application of Iowa's immunity statute.

**c. Simplification of judicial task**

■ This factor is not particularly relevant where the competing laws are straightforward and "the law of either state could be applied without difficulty." *Jepson,* 513 N.W.2d at 472. Of course, Minnesota courts are fully capable of applying Minnesota law. And, in this case, the application of Iowa law also simplifies the judicial task because, absent evidence of recklessness, application of the immunity statute results in the dismissal of the case. Therefore, we conclude that this factor is neutral.

**d. Advancement of the forum's governmental interest**

■ This factor goes to which law would "most effectively advance a 'significant interest of the forum' state." *Medtronic, Inc. v. Advanced Bionics Corp.,* 630 N.W.2d 438, 455 (Minn.App.2001). This factor is designed to ensure that Minnesota courts do not have to apply rules of law that are "inconsistent with Minnesota's concept of fairness and equity." *Id.* In considering which law will advance the governmental interest of Minnesota, this court considers the public policy of both forums. *Lommen v. City of East Grand Forks,* 522 N.W.2d 148, 152 (Minn.App. 1994), *review granted* (Minn. Dec. 2, 1994), *review vacated and appeal dismissed* (Minn. Aug. 9, 1995).

■ "Minnesota places great value in compensating tort victims." *Jepson,* 513 N.W.2d at 472. Minnesota also places an interest in "permitting its citizens access to [its] courts...." *Myers v. Gov't Employees Ins. Co.,* 302 Minn. 359, 364, 225 N.W.2d 238, 243 (1974). But Iowa also has a substantial governmental interest, that of encouraging participation in agricultural activities. By encouraging participation in agricultural activities such as horse shows, Iowa brings people and money to the state. We cannot ignore Iowa's interest in granting immunity from liability for some injuries sustained by participants in domesticated animal activities. Given the competing valid interest of both states, we conclude that this factor is either neutral, or slightly favors application of Iowa law.

**e. Better rule of law**

■ The better rule of law is "the rule that made 'good socio-economic sense for the time when the court speaks.'" *Jepson,* 513 N.W.2d at 473 (quoting Robert A. Leflar, *Conflicts Law: More on Choice-Influencing Considerations,* 54 Calif. L.Rev. 1584, 1588 (1966)). Generally, this

factor is addressed only when the other four factors are not dispositive as to which state's law should be applied. *Medtronic,* 630 N.W.2d at 455–56. Here, the other factors lead us to conclude that Iowa law applies, and therefore, we need not determine which state has the better rule of law in this case. Accordingly, we affirm the district court's determination that Iowa law applies to this matter.

## II. Recklessness

■ The protection provided by chapter 673 of the Iowa Code does not apply if the injury is caused by an act committed recklessly. Iowa Code § 673.2(1). The district court determined that "there simply are no facts presented which would support a finding by a jury that [respondent's] conduct or behavior in this case rose to the level of recklessness." We agree.

The Iowa Supreme Court recently applied the recklessness standard found in the Restatement (Second) of Torts. *See Leonard v. Behrens,* 601 N.W.2d 76, 80 (Iowa 1999). The Restatement (Second) of Torts defines recklessness as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500, at 587. Additionally, the Iowa Supreme Court has held that to prove recklessness as the basis for a duty, "a plaintiff must show that the actor has intentionally done an act of an unreasonable character in

disregard of a risk known to or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Morris v. Leaf,* 534 N.W.2d 388, 391 (Iowa 1995).

When respondent realized that he had been assigned double-tie stalls, he immediately took action to rectify the situation by preparing another stall for the stallion. Respondent did not ask appellant to approach the gelding and told appellant that he had just moved the stallion, and that the horses were "getting after one another." There was no evidence that this gelding had ever kicked anyone before or had a tendency to be a "kicky" horse. We conclude that the district court did not err by determining that there is no evidence raising a genuine issue of material fact regarding whether respondent acted recklessly.

## III. Notice of review

Respondent filed notice of review on the issue of whether appellant assumed the risk of injury. But because we affirm the district court's grant of summary judgment to respondent on the basis of choice of law, we do not reach the assumption of risk argument.

## DECISION

Because we conclude that Iowa law applies to this matter and that there is no genuine issue of material fact regarding whether respondent acted recklessly, the district court did not err in granting summary judgment to respondent.

**Affirmed.**