**KOLBERG–PIONEER, INC., Appellant,**

v.

**BELGRADE STEEL TANK COMPANY, Respondent.**

No. A12–0538.

Court of Appeals of Minnesota.

Oct. 22, 2012.

Frederick W. Morris, Jonathon T. Naples, Leonard, Street and Deinard, Minneapolis, MN, and Anthony A. Jackson, pro hac vice, Chambliss, Bahner & Stophel, P.C., Chattanooga, TN, for appellant.

James T. Martin, Gislason, Martin, Varpness & Janes, P.A., Minneapolis, MN, for respondent.

Considered and decided by CHUTICH, Presiding Judge; SCHELLHAS, Judge; and CLEARY, Judge.

## OPINION

CHUTICH, Judge.

Appellant, a Tennessee corporation, was sued in strict liability in Montana federal court for injuries resulting from a silo that it sold. The silo was manufactured by respondent, a Minnesota company. Appellant sought common-law indemnity from respondent in Minnesota state court. The district court determined that Montana indemnity law applied and dismissed appellant's indemnity claim. Because choice-of-law principles dictate the application of Minnesota's indemnity law, we reverse and remand.

## FACTS

Appellant Kolberg–Pioneer, Inc. (Kolberg) is a Tennessee corporation, with its principal place of business in Yankton, South Dakota. Respondent Belgrade Steel Tank Company (Belgrade) is a Minnesota corporation, with its principal place of business in Belgrade, Minnesota. Belgrade manufactures cement silos at its facility in Minnesota, and sold one to Kolberg in 1996. Kolberg in turn sold the silo to Hall–Perry Equipment Company, a third party based in Montana, which then sold the silo to Envirocon, an environmental-remediation company also based in Montana.

In October 2006, Judith Ficek, an Envirocon employee, was injured by an "exploding hatch atop the silo," at a worksite in Montana. After the accident, Ficek sued several parties, including Kolberg, in Montana federal court. Ficek eventually added Belgrade as a defendant, after learning that it manufactured the silo. Ficek asserted strict-product-liability claims

against Kolberg and Belgrade, claiming that the silo was defective and unreasonably dangerous due to its design and lack of adequate warnings.

In November 2010, after twice trying unsuccessfully to tender its defense in the Montana action to Belgrade, Kolberg sued Belgrade in Minnesota state court for common-law indemnity. Kolberg sought to recover any settlement amount and the costs and fees it incurred in defending itself against Ficek's Montana suit. Under Minnesota law, a downstream seller in a distribution chain, such as Kolberg, may obtain indemnity from the product's manufacturer when the seller is sued in strict product liability because the product was defectively designed or manufactured. *See Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 96–97, 179 N.W.2d 64, 72–73 (1970). After Kolberg initiated the Minnesota action, Kolberg and Belgrade reached separate settlement agreements with Ficek, which resolved the Montana law suit. Under Montana law, Belgrade's settlement with Ficek extinguished its duty to indemnify Kolberg. *See Durden v. Hydro Flame Corp.*, 295 Mont. 318, 983 P.2d 943, 949 (1999).

Kolberg and Belgrade filed cross-motions for summary judgment in the Minnesota action. The parties disputed whether Montana law or Minnesota law should apply to Kolberg's indemnity claim. The district court granted Belgrade's motion for summary judgment and ruled that Montana law, not Minnesota law, applied, and therefore Belgrade's settlement with Ficek extinguished its duty to indemnify Kolberg.

Alternatively, the district court held that, "[i]f, on appeal, it is determined that this Court incorrectly applied Montana law and that Minnesota law should apply, the [district court] believes Summary Judgment should be granted in favor of [Kolberg]," because Kolberg's liability was "solely derivative or vicarious of Belgrade's liability." The district court specifically found that Belgrade did not present sufficient evidence to allow "reasonable persons to draw different conclusions regarding [Kolberg]'s independent liability in the Montana suit."

Kolberg now appeals, challenging the district court's adoption of Montana law. Because Belgrade did not challenge the district court's ruling that Kolberg's liability is strictly vicarious, the sole issue on appeal is whether Minnesota or Montana law governs this indemnification action.

## ISSUE

Does Minnesota law apply when a passive downstream seller seeks indemnity from a Minnesota manufacturer in Minnesota for damages paid to settle a strict-liability claim arising from injuries caused by the manufacturer's product in a different state?

## ANALYSIS

A district court's resolution of a choice-of-law issue is a question of law, which this court reviews de novo. *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 4 (Minn.App.2003), *review denied* (Minn. Dec. 16, 2003). Before applying a choice-of-law analysis, a court must determine that a true conflict exists and that both states' laws can be constitutionally applied. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93–94 (Minn. 2000); *Jepson v. Gen. Cas. Co. of Wisc.*, 513 N.W.2d 467, 469 (Minn.1994). Here, the parties agree with the district court's conclusion that these two preliminary inquiries are satisfied, as do we. The choice of Minnesota or Montana law will determine the outcome of the suit, and the parties have sufficient contacts with each state to justify applying the law of either

state. *See Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981).

### Choice–Influencing Considerations

■ After satisfaction of these two initial steps, a court must apply "five choice-influencing considerations, to determine which state's law applies." *Danielson,* 670 N.W.2d at 5. These considerations are "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Jepson,* 513 N.W.2d at 470 (citing *Milkovich v. Saari,* 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973)).

#### *Predictability of Result*

■ The first factor, predictability of result, "primarily embodies the ideal that litigation arising from a given set of facts should be decided the same regardless of where the litigation occurs, so that neither party will benefit from forum shopping." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.,* 590 N.W.2d 670, 673 (Minn.App. 1999) (quotation omitted), *aff'd,* 604 N.W.2d 91 (Minn.2000). In contractual situations, predictability also serves to preserve the parties' justified expectations. *Id.*

■ "This factor goes to whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action, not to whether that choice was predictable after the transaction or event." *Nesladek v. Ford Motor Co.,* 46 F.3d 734, 738 (8th Cir.1995) (applying Minnesota choice-of-law analysis), *cert. denied,* 516 U.S. 814, 116 S.Ct. 67, 133 L.Ed.2d 28 (1995). Predictability is often of little relevance in tort cases because of the "unplanned nature" of accidents. *Jepson,* 513 N.W.2d at 470; *see also Nesladek,*

46 F.3d at 738 ("By definition, accidents are unplanned, so in the ordinary tort case the parties can claim no legitimate expectation that a certain state's law would apply in an action on an unanticipated event.").

■ As the district court aptly noted, however, while the initial suit was a tort claim, Kolberg's indemnity claim "does not arise from an accidental encounter between the parties, but rather from a consensual business transaction—the sale of the silo." *See Hime v. State Farm Fire & Cas. Co.,* 284 N.W.2d 829, 833 (Minn.1979) (stating that a case with "traits of both torts and contract[ ] requires consideration of all five factors"). Because this claim involves a sale and an underlying tort, we will consider this factor.

We conclude that predictability of result favors applying Minnesota law. Applying Minnesota law to product-liability cases involving a Minnesota manufacturer enables the manufacturer and any downstream seller, whether based in Minnesota or elsewhere, to know the rules that will govern their transactions. Such predictability may even encourage downstream sellers to transact business with Minnesota manufacturers.

By contrast, applying Montana law and allowing the right to indemnity to shift to wherever the product eventually ends up and happens to injure someone would lead to unpredictable results. Here, the silo that injured Ficek was being used on a project in Florida shortly before the accident occurred in Montana and had been previously used on other projects throughout the country. Had the accident occurred in Florida, choice of law analysis would be unnecessary because, like Minnesota law, Florida law requires Belgrade to indemnify Kolberg. *See Julien P. Benjamin Equip. Co. v. Blackwell Burner Co.,*

450 So.2d 901, 902 (Fla.Dist.Ct.App.1984). Accordingly, this factor favors application of Minnesota law.

### Maintenance of Interstate Order

■■ The second factor, maintenance of interstate order, weighs against application of Minnesota law. This factor is "primarily concerned with whether the application of Minnesota law would manifest disrespect for [Montana's] sovereignty or impede the interstate movement of people and goods." *Jepson,* 513 N.W.2d at 471. Ideally, the courts of different states will "strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Id.* In determining the relevance of this factor, "the court may also consider whether or not application of Minnesota law will encourage forum shopping." *Hague v. Allstate Ins. Co.,* 289 N.W.2d 43, 49 (Minn. 1979), *aff'd,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Evidence of forum shopping indicates disrespect for the other sovereign and therefore frustrates the maintenance of international or interstate order. *See Schumacher v. Schumacher,* 676 N.W.2d 685, 690–91 (Minn.App.2004).

Belgrade argues that Kolberg engaged in forum shopping by filing the Minnesota action because Kolberg could have asserted its indemnification claim in the Montana lawsuit. Kolberg counters that it has not engaged in forum shopping because it "has not sued Belgrade in a state having only attenuated contacts with [Kolberg]'s indemnity claim against Belgrade;" it notes that the parties' relationship is based in Minnesota.

To be sure, Kolberg's claim has genuine contacts with Minnesota because the silo was manufactured and sold by a Minnesota corporation. *Myers v. Gov't Emp. Ins. Co.,* 302 Minn. 359, 365, 225 N.W.2d 238, 242 (1974) ("[M]aintenance of interstate order is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated."). As Belgrade argues, however, Minnesota's indemnification law likely promoted forum shopping in this case. While Kolberg was not required to bring the claim against Belgrade in the Montana action, *see* Fed.R.Civ.P. 13(g) (stating that cross-claims are always permissive), it seems likely that if Montana law allowed for the same recovery as Minnesota law, Kolberg would have asserted a cross-claim against Belgrade there rather than initiating a new action in Minnesota.

The record does not contain explicit findings that Kolberg engaged in forum shopping, but we conclude that this factor slightly favors application of Montana law.

### Simplification of the Judicial Task

■ This third factor examines whether "the law of either state could be applied without difficulty," *Jepson,* 513 N.W.2d at 472, and is generally neutral so long as the laws of both states are straightforward and clear. *Danielson,* 670 N.W.2d at 8. Because both Minnesota law and Montana law are easily applied, this factor is neutral. *See Nodak,* 604 N.W.2d at 95 (finding that because "the conflicting laws at issue are relatively clear in that there is no dispute that recovery is allowed under one but not the other, this factor favors neither state's law").

### Advancement of the Forum's Governmental Interest

■ The fourth choice-influencing factor "goes to which law would most effectively advance a significant interest of the forum state. This factor is designed to ensure that Minnesota courts do not have to apply rules of law that are inconsistent with Minnesota's concept of fairness and equity." *Schumacher,* 676 N.W.2d at 691

(quotations and citations omitted). In analyzing this factor, this court should also consider the public policy of Montana. *See id.; Myers,* 302 Minn. at 365, 225 N.W.2d at 242.

Here, as the district court correctly noted, Minnesota has three relevant public policy interests: compensating tort victims, protecting consumers by imposing the cost of defective products on the product's maker, and promoting settlement and finality. We find that application of Minnesota law would best advance all of these goals, and that, conversely, application of Montana law would thwart achievement of one of these key policies.

Minnesota's weighty interest in compensating tort victims, *see Jepson,* 513 N.W.2d at 472, has been satisfied because Ficek has been compensated for her injuries. In addition, Minnesota's interest in promoting settlement is advanced because its indemnity rule encourages a downstream seller to settle with a product-liability plaintiff knowing that it may recover that settlement payment from the product's manufacturer. Finally, Minnesota has a clearly expressed public policy in holding a product's maker responsible for the costs of a defective product. Where, as here, a seller's liability arises solely from its passive role in selling a defective product, it should not be saddled with the costs of defending a product it did not design. *See Farr,* 288 Minn. at 97, 179 N.W.2d at 72 (stating that a seller is entitled to indemnity when "liability stems solely from its passive role as the retailer of a defective product furnished to it by the manufacturer"); *see also In re Shigellosis Litig.,* 647 N.W.2d 1, 8 (Minn.App.2002) (discussing Minnesota's seller's-exception statute that "allows a nonmanufacturing defendant who did not contribute to the alleged defect to defer strict liability to the manufacturer"), *review denied* (Minn. Aug. 20, 2002). Appli-

cation of Montana law would thwart this last key policy goal and is therefore "inconsistent with Minnesota's concept of fairness and equity." *Danielson,* 670 N.W.2d at 8 (quotation omitted).

Moreover, even though the states take different approaches to indemnity claims, application of Minnesota law is not necessarily in conflict with Montana's expressed public policy interests. The Montana Supreme Court has stated that promoting settlement of claims and compensating victims are the primary policy concerns in Montana: "The public has a strong interest in [s]eeing that compensation is made for the physical, emotional, and often catastrophic injuries caused by the use of a defectively made product.... [T]his interest far outweighs any interest an individual retailer or wholesaler of a defective product might have in placing ultimate responsibility on the manufacturer." *Durden,* 983 P.2d at 949. Thus, "a settlement by one tortfeasor precludes claims for both contribution and indemnity against the settling tortfeasor." *Id.*

While Montana's primary policy of promoting settlement is clear, its interest is diminished when, as here, its policy has already been fulfilled. Ficek has recovered against both Kolberg and Belgrade for her injuries; thus, Montana likely has little interest in whether Belgrade or Kolberg ultimately pay Ficek's settlement with Kolberg. Additionally, as explained above, Minnesota's law is not in complete conflict with Montana's policy of promoting settlement, as Minnesota's indemnification policy encourages downstream sellers to settle with product-liability plaintiffs.

In sum, because application of Minnesota law promotes this forum's governmental interests and Montana's public policy interests have already been achieved, the fourth factor favors application of Minnesota law.

*Application of the Better Rule of Law*

The final factor is applied "only when the other four factors are not dispositive." *Schumacher*, 676 N.W.2d at 692. In fact, this court has noted that this factor may be obsolete. *See Boatwright v. Budak*, 625 N.W.2d 483, 490 (Minn.App. 2001), *review denied* (Minn. July 24, 2001); *Nodak*, 590 N.W.2d at 673 n. 3; *Lommen v. City of E. Grand Forks*, 522 N.W.2d 148, 152 n. 4 (Minn.App.1994).

Balancing the factors here, we conclude that two factors, predictability and the forum's interests, clearly favor Minnesota law. Therefore, analysis of the final factor is not necessary. We note, however, that Belgrade was unable to identify any other state that applies an indemnity rule similar to Montana's rule. For this reason, and for the reasons stated above, this factor, if weighed, would also favor application of Minnesota law.

### DECISION

Minnesota law applies to a common-law indemnity claim brought in Minnesota by a passive downstream seller against a Minnesota manufacturer for damages for injuries caused by the manufacturer's product in a different state. Application of Minnesota law encourages predictability of results and advances Minnesota's interests. Because the district court erred by concluding that Montana law governs Kolberg's indemnity claim against Belgrade, we reverse the district court's entry of summary judgment in favor of Belgrade, direct the court to enter summary judgment in Kolberg's favor, and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**