*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1337**

Steve Quest,
Respondent,

vs.

Nicholas Robert Rekieta, et al.,
Appellants.

**Filed May 20, 2024**
**Affirmed**
**Ede, Judge**

Kandiyohi County District Court
File No. 34-CV-23-12

Christopher W. Bowman, Madigan, Dahl & Harlan, P.A., Minneapolis, Minnesota; and

David W. Schneider, Schneider & Madsen, P.C., Willmar, Minnesota (for respondent)

Matt Kezhaya, Kezhaya Law PLC, Minneapolis, Minnesota; and

Marc J. Randazza (pro hac vice), Las Vegas, Nevada (for appellants)

Considered and decided by Larson, Presiding Judge; Reyes, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this interlocutory appeal, appellants seek review of the district court's order denying their special motion to dismiss respondent's tort claims under Colorado's anti-SLAPP (Strategic Lawsuit Against Public Participation) law, Colorado Revised Statutes section 13-20-1101 (2022). Appellants ask this court to reverse and remand, arguing that

the district court erred by concluding that Minnesota law governs, rather than Colorado law. Because we conclude that the five-factor test applicable to civil tort choice-of-law disputes favors Minnesota law, we affirm.

**FACTS**

Appellant Nicholas Robert Rekieta is a Minnesota attorney with an online presence. Rekieta discusses topical legal issues through pre-recorded videos and video streams, which he publishes online. Respondent Steve Quest is a Colorado resident who creates, directs, and publishes videos online.

Quest filed a complaint in Minnesota district court against appellants Rekieta and Rekieta Law LLC (collectively, Rekieta) for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Rekieta filed a special motion to dismiss Quest's complaint under Colorado's anti-SLAPP statute, *see* Colo. Rev. Stat. § 13-20-1101, which "provides a mechanism to dismiss nonmeritorious lawsuits infringing on First Amendment rights," *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1285 (Colo. App. 2022), *cert. denied* (Colo. July 17, 2023). Quest opposed Rekieta's motion to dismiss, arguing that the district court should apply the law of Minnesota, not Colorado. In July 2023, the district court denied Rekieta's motion to dismiss because it concluded that Minnesota law governs this case.

Citing *Jepson v. General Casualty Co. of Wisconsin*, 513 N.W.2d 467, 470 (Minn. 1994), the district court applied a five-factor test to resolve the choice-of-law dispute, considering: (1) predictability of result; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental

interest; and (5) application of the better rule of law. The district court determined that factors one, three, and four favored applying Minnesota law, and that factor two favored applying Colorado law. The district court did not analyze factor five, instead choosing to rely on its analysis of the first four factors based on caselaw holding that district courts should only apply factor five "when the first four factors do not clearly resolve the choice of law issue." *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 503 N.W.2d 486, 491 (Minn. App. 1993), *aff'd on other grounds, rev'd on other grounds*, 517 N.W.2d 888 (Minn. 1994).

Rekieta appeals.[1]

## DECISION

Whereas Rekieta maintains that Colorado Revised Statutes section 13-20-1101 applies here, Quest insists that the district court did not err by choosing Minnesota law. "Choice-of-law questions are questions of law and are reviewed de novo." *Schumacher v. Schumacher*, 676 N.W.2d 685, 690 (Minn. App. 2004). As explained below, we conclude that the district court did not err in deciding to apply Minnesota law.

---

[1] We questioned but ultimately accepted jurisdiction, limiting the scope of this appeal to the district court's choice-of-law decision, which we concluded is independently appealable under the collateral-order doctrine. *See Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 240 (Minn. 2002).

*There is a conflict between Colorado and Minnesota law and either may be constitutionally applied.*

Before turning to the merits of the parties' choice-of-law arguments, we briefly address certain preliminary issues to determine whether a choice-of-law analysis is appropriate.

Our "first consideration is whether the choice of one state's law over another's creates an actual conflict." *Jepson*, 513 N.W.2d at 469. Here, the parties do not dispute, and we agree, that there is an actual conflict between Minnesota and Colorado law. *See id.* Both Colorado and Minnesota have anti-SLAPP laws that authorize a district court to dismiss a lawsuit if certain procedural requirements are met. *See* Colo. Rev. Stat. § 13-20-1101; Minn. Stat. § 554.02 (2022). But the Minnesota Supreme Court has held that, as applied to tort claims at law, Minnesota's anti-SLAPP statute unconstitutionally infringes on the state constitutional right to a jury trial. *Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623, 637–38 (Minn. 2017). Thus, if Colorado's anti-SLAPP statute applies, Rekieta may have a meritorious special motion to dismiss that could dispose of Quest's claims. But no such motion currently exists under Minnesota law. The choice of Colorado's law over Minnesota's therefore creates an actual conflict.

"Next, we must consider whether the law of both states can be constitutionally applied." *Jepson*, 513 N.W.2d at 469–70. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* (quoting *Allstate Ins. Co. v. Hague*, 449

4

U.S. 302, 312–13 (1981)). Here, the parties do not dispute that either state's law may be selected in a "constitutionally permissible manner" per *Jepson*, and we conclude that both Colorado and Minnesota have sufficient contacts with this case to create state interests. *See id.*

### Minnesota law applies to this matter.

Having concluded that there is a conflict between Colorado and Minnesota law and that either may be constitutionally applied, we must now resolve the choice-of-law question. *See id.* at 470. Although Rekieta suggests we should employ the "most-significant-relationship" test,[2] the parties ultimately agree—as do we—that the five-factor

---

[2] Citing *State v. Castillo-Alvarez*, 836 N.W.2d 527, 538 n.6 (Minn. 2013), Rekieta contends that "Minnesota recognizes and uses the Restatement's most-significant-relationship approach to resolve a variety of choice-of-law issues." *See* Restatement (Second) of Conflict of Law § 150 (1971). But *Castillo-Alvarez* is distinguishable because it analyzes, in the criminal-law context, the choice-of-law framework for "resolv[ing] issues relating to the admission of evidence collected in another jurisdiction." 836 N.W.2d at 537. Specifically, *Castillo-Alvarez* considered whether a Minnesota rule mandating the recording of custodial interrogations required the exclusion of unrecorded, out-of-state interrogations conducted by out-of-state officers. *Id.* at 537, 539. And the supreme court chose the "most-significant-relationship" test in *Castillo-Alvarez* because, consistent with prior caselaw considering the admissibility of evidence in criminal trials, the Minnesota rule has "both a procedural and substantive purpose." *Id.* at 539; *see also State v. Heaney*, 689 N.W.2d 168, 170 (Minn. 2004) ("A conflict of laws concerning the admissibility of evidence protected by the physician-patient relationship is resolved by applying the two-prong test set forth in Restatement (Second) of Conflict of Laws § 139 (1971)."). Rekieta has not identified any civil tort cases employing the most-significant-relationship approach. Thus, although our following discussion acknowledges some of the shortcomings of the five-factor Leflar analysis—particularly as to predictability of result— we nevertheless apply Leflar here, consistent with previous civil tort cases. *See Lommen v. City of East Grand Forks*, 522 N.W.2d 148, 150 (Minn. App. 1994), *rev. granted* (Minn. Dec. 2, 1994) *and appeal dismissed* (Minn. Aug. 9, 1995); *see also Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973).

Leflar choice-of-law analysis applies.[3] *See Lommen*, 522 N.W.2d at 150 ("To make the actual choice of law, Minnesota has adopted Professor Robert A. Leflar's approach."). "Leflar identified five choice-influencing considerations: (1) predictability of result, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) application of the better rule of law." *Id.* "The Leflar approach requires courts to critically analyze each case and, 'to be true to the method rather than to seek superficial factual analogies between cases.'" *Id.* (quoting *Jepson*, 513 N.W.2d at 470). We next analyze each consideration in turn.

### 1. *Predictability of result favors Colorado law.*

The first factor "addresses whether the choice of law was predictable *before* the time of the transaction or event giving rise to the cause of action." *Schumacher*, 676 N.W.2d at 690 (quotation omitted). The Minnesota Supreme Court has explained that "this factor acts to preserve the parties' justified contractual expectations" and "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." *Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000). "The factor applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 454 (Minn. App. 2001). "It

---

[3] The Leflar approach applies to *substantive* choice-of-law issues and does not apply to conflicts of procedure. *Fleeger v. Wyeth*, 771 N.W.2d 524, 527 (Minn. 2009). If there is a procedural conflict of law, the law of the forum—here, Minnesota—applies. *See id.* The parties do not address whether the Colorado anti-SLAPP statute is substantive or procedural. And because we conclude that Minnesota law is proper under the Leflar test, we need not decide whether the Colorado anti-SLAPP statute is substantive or procedural.

6

is intended to protect the justified expectations of the parties to the transaction." *Id.* (quotation omitted). "Predictability is often of little relevance in tort cases because of the 'unplanned nature' of accidents." *Kolberg-Pioneer, Inc. v. Belgrade Steel Tank Co.*, 823 N.W.2d 669, 673 (Minn. App. 2012) (quoting *Jepson*, 513 N.W.2d at 470), *rev. denied* (Minn. Jan. 15, 2013).

In *Lommen*, despite observing that "[t]ort actions generally do not implicate party expectations because torts stem from unplanned accidents[,]" we still analyzed predictability of result in the tort context. 522 N.W.2d at 150. There, a Minnesota police officer pursued a stolen vehicle across the state line into North Dakota and collided with a vehicle carrying the appellant, who was injured. *See id.* at 149. Despite the injury's occurrence in North Dakota, we concluded that this factor favored applying Minnesota immunity law because the officer "had a substantial expectation of on-the-job tort immunity." *Id.* at 150.

On one hand, *Lommen* suggests that predictability of result would favor Minnesota law here because Rekieta, as a Minnesota attorney, had a substantial expectation that Minnesota's anti-SLAPP law—or rather, lack thereof in this context, given *Leiendecker*— would apply to any allegedly tortious comments he made. On the other hand, the supreme court has emphasized that predictability of result "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." *Nodak*, 604 N.W.2d at 94. In discussing forum shopping, the supreme court has reasoned that "[p]eople who purposefully seek advantages offered by another state ought not be allowed to avoid the burdens associated with their choice." *Jepson*, 513

7

N.W.2d at 471. Because Quest filed suit in Minnesota and Rekieta is a Minnesota resident, we acknowledge that this case is not one in which the plaintiff's contacts with the forum state are extremely attenuated. But, as a Colorado resident, Quest's decision to file suit against Rekieta in Minnesota rather than Colorado reflects forum shopping because Quest is seeking to avoid one of the burdens associated with his Colorado residency: Colorado's anti-SLAPP law. Because this flouts the "ideal" that predictability of result is intended to promote, we conclude that this factor favors application of Colorado law. *See Nodak*, 604 N.W.2d at 94.

### 2. *Maintenance of interstate order favors Colorado law.*

The second factor—maintenance of interstate order—is mainly concerned with "whether the application of Minnesota law would manifest disrespect for [Colorado's] sovereignty or impede the interstate movement of people and goods." *Jepson*, 513 N.W.2d at 471. Courts of different states aim to maintain a "coherent legal system" by "striv[ing] to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Id.* "[M]aintenance of interstate order is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Myers v. Gov't Emps. Ins. Co.*, 225 N.W.2d 238, 242 (Minn. 1974). But "[e]vidence of forum shopping or evidence that application of one state's law would promote forum shopping, would be an attempt to evade, and would indicate disrespect for, [Colorado] law." *Schumacher*, 676 N.W.2d at 690–91.

Rekieta, relying on *Schumacher*, argues that this factor favors Colorado law because failing to apply the Colorado anti-SLAPP statute would "manifest disrespect for

Colorado's public policy." Quest counters that Minnesota "has 'sufficient contacts with and interest in the facts and issues being litigated' to mitigate any concerns about disruption of interstate order," quoting a decision by the United States Court of Appeals for the Eighth Circuit as persuasive support.[4] *See Nesladek v. Ford Motor Co.*, 46 F.3d 734, 739 (8th Cir. 1995).

In *Nesladek*, the Eighth Circuit not only analyzed Minnesota's contacts with the issues being litigated, but also considered the contacts of the other state. *Id.* Here, both Colorado and Minnesota have equal contacts with the suit. Minnesota has a connection to the suit because Rekieta is a Minnesota resident and his conduct allegedly occurred in Minnesota. Colorado has a connection to the suit because part of Quest's alleged injuries— i.e., damage to his reputation and emotional distress—occurred in Colorado. But because part of Quest's injury was realized in a state other than the one where the suit was brought, we agree with Rekieta that *Schumacher* is instructive.

*Schumacher* concerned an Iowa statute that provides immunity to owners of domesticated animals that injure other people. 676 N.W.2d at 688. In *Schumacher*, both the plaintiff and the defendant were Minnesotans. *Id.* The plaintiff sued his father in Minnesota district court for an injury the plaintiff suffered in Iowa while working at a horse show. *Id.* at 688–89. In analyzing the maintenance of interstate order, we stated that applying Minnesota law would promote forum shopping because anyone harmed by a

---

[4] "A federal court's interpretation of Minnesota law is not binding on this court, though it may have persuasive value." *TCI Bus. Cap., Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 431 (Minn. App. 2017) (citing *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 330 (Minn. 2000)) (other citations omitted).

domesticated animal in Iowa owned by a non-Iowa resident could evade the immunity by suing in the owner's home state. *Id.* at 691. We therefore concluded that the maintenance of interstate order favored the application of Iowa's immunity statute. *Id.* We reasoned that, "[b]y passing the immunity statute, Iowa ha[d] stated its public policy interest in encouraging participation in agricultural activities" and that "[a]pplying Minnesota's law in the face of such an economic and public policy would indicate disrespect for Iowa law." *Id.*

In this case, the Colorado anti-SLAPP statute was enacted to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Rosenblum v. Budd*, 538 P.3d 354, 362 (Colo. App. 2023) (quoting Colo. Rev. Stat. § 13-20-1101(1)(b)), *cert. denied*, No. 23SC685, 2024 WL 1144424 (Colo. Mar. 11, 2024). Colorado has therefore expressed an interest in encouraging the exercise of free-speech rights and empowering courts to dismiss nonmeritorious lawsuits infringing on such rights. *See L.S.S.*, 523 P.3d at 1285. Applying Minnesota law in the face of such a public policy would manifest disrespect for Colorado law. *See Schumacher*, 676 N.W.2d at 691. And, as discussed above, applying Minnesota law under these circumstances could promote forum shopping by incentivizing plaintiffs from states with anti-SLAPP statutes to file lawsuits in Minnesota. Thus, we conclude that maintenance of interstate order favors application of Colorado law.

### 3. *Simplification of the judicial task favors Minnesota law.*

The third factor—simplification of the judicial task—"is often considered insignificant because courts can as easily apply another state's law as their own." *Medtronic, Inc.*, 630 N.W.2d at 455. But "the judicial task is 'obviously' simplified when a 'Minnesota court applies Minnesota law.'" *Id.* (quoting *Gimmestad v. Gimmestad*, 451 N.W.2d 662, 666 (Minn. App. 1990)).

The Colorado anti-SLAPP statute at issue creates a "two-step process for considering a special motion to dismiss." *Rosenblum*, 538 P.3d at 362. "First, the defendant filing the special motion to dismiss must make a threshold showing that the anti-SLAPP statute applies." *Id.* "Second, if a defendant can establish that the claim falls within the anti-SLAPP statute's scope, the burden shifts to the plaintiff to demonstrate a reasonable likelihood that the plaintiff will prevail on the claim." *Id.* (quotation omitted).

There is a disagreement between two divisions of the Colorado Court of Appeals on how to evaluate a plaintiff's likelihood of prevailing at the second step of this process. The First Division has held that courts "neither simply accept the truth of the allegations nor make an ultimate determination of their truth." *Salazar v. Pub. Tr. Inst.*, 522 P.3d 242, 248 (Colo. App. 2022), *reh'g denied,* (Colo. App. Oct. 13, 2022). Instead, courts assess whether "the allegations and defenses are such that it is reasonably likely that a jury would find for the plaintiff." *Id.* By contrast, the Fifth Division has instead held that "the court does not weigh evidence or resolve conflicting factual claims but simply accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." *L.S.S.*, 523 P.3d at 1286 (quotations omitted).

11

"[D]ivisions of the Colorado Court of Appeals act independently based on their understanding of the law[,]" meaning that "divisions of the Colorado Court of Appeals are free to decide an issue before them in a way that conflicts with an earlier decision by another division on the same issue." *Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1198 n.3 (D. Colo. 2023) (*Make Your Life Epic LLC I*), *appeal dismissed*, 98 F.4th 1320 (10th Cir. 2024) (*Make Your Life Epic LLC II*). "Therefore, even though *Salazar* was issued before *L.S.S.* . . . , it does not control . . . ." *Id.* The Colorado Supreme Court has yet to resolve this jurisprudential split. *See id.* at 1198 (citing *Salazar*, *L.S.S.,* and other cases, observing that, "[p]erhaps also due to the thin caselaw on the anti-SLAPP statute, divisions of the Colorado Court of Appeals apparently disagree on how to treat Plaintiff's factual allegations for purposes of the Special Motion[,]" and stating that "[t]he Colorado Supreme Court has not yet resolved this split among divisions of the Colorado Court of Appeals"). *But see Coomer v. Trump for President, Inc.*, No. 22CA0843, 2024 WL 1560462, at *12 (Colo. App. Apr. 11, 2024) (Fourth Division opining that *Salazar* and *L.S.S.* are not inconsistent because, "while we do not necessarily accept the plaintiff's *allegations* as true, we do accept as true the plaintiff's *evidence*").

As a result of the foregoing, requiring the district court here to apply the Colorado anti-SLAPP statute—assuming without deciding that Rekieta can make a threshold showing at the first step that the anti-SLAPP statute applies—would leave the district court without clear guidelines for its analysis of the second step: Quest's likelihood of prevailing. Simply put, the split in Colorado Court of Appeals authority complicates the judicial task. Unlike the morass presented by Colorado law, the judicial task for the district court "is

obviously simplified . . . [by] appl[ying] Minnesota law." *Medtronic, Inc.*, 630 N.W.2d at 455 (quotation omitted). We therefore conclude that this factor favors applying Minnesota law.

### 4. Advancement of the forum's governmental interest favors Minnesota law.

The fourth factor considers which state's law would most effectively advance a "significant interest" of Minnesota. *Jepson*, 513 N.W. 2d at 472. "This factor assures that Minnesota courts are not called upon to apply rules of law inconsistent with Minnesota's concept of fairness and equity." *Medtronic, Inc.*, 630 N.W.2d at 455 (quotation omitted).

In *Leiendecker*, the Minnesota Supreme Court held that Minnesota's anti-SLAPP statute was unconstitutional because it "instruct[ed] district courts to usurp the role of the jury by making pretrial factual findings that c[ould] . . . result in the complete dismissal of the underlying action." 895 N.W.2d at 635. The supreme court explained that clauses 2 and 3 of Minnesota Statutes section 554.02, subdivision 2, violated a responding party's constitutional right to a civil jury trial because the clauses "transfer the jury's fact-finding role to the district court" and "require the responding party to meet a higher burden of proof before trial (clear and convincing evidence) than it would have to meet at trial (preponderance of the evidence)." *Id.* at 636. Thus, "a court assessing a claim under Minn. Stat. § 554.02 [was required to] 'make a finding' based on evidence, rather than assuming that the allegations are true." *Id.*

The supreme court's analysis in *Leiendecker* focused on an individual's right to a civil jury trial under article I, section 4 of the Minnesota Constitution. *Id.* at 634–36. And, in the seven years since the supreme court struck down Minnesota's anti-SLAPP statute in

13

*Leiendecker*, the legislature has not amended Minnesota Statutes section 554.02 to address its constitutional infirmity.[5] *Cf. W. Union Tel. Co. v. Spaeth*, 44 N.W.2d 440, 441 (Minn. 1950) ("The judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally." (quotation omitted)). Minnesota has therefore made clear that its interest in protecting a litigant's right to a civil jury trial prevails over its interest in maintaining an anti-SLAPP statute, as applied to tort claims at law. Colorado, on the other hand, does not provide a right to a civil jury trial under its state constitution. *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901, 906 (Colo. 1993) ("the Colorado Constitution does not guarantee a jury trial in civil cases as a matter of right").

Rekieta contends that Colorado's anti-SLAPP statute does not violate Minnesota's right to a civil jury trial because, under Colorado law, "an anti-SLAPP motion is analyzed under the same standard as a motion for summary judgment" and "[t]his framework is compatible with Minnesota law allowing summary judgment in cases" that are meritless. We are not persuaded.

---

[5] After oral argument, Quest filed a letter advising that the Minnesota Legislature is now considering legislation related to Minnesota's anti-SLAPP statute. In response, Rekieta likewise filed a letter. Neither letter complies with Minnesota Rule of Civil Appellate Procedure 128.05. As much as Quest's letter cites pending legislation that is not yet enacted, it does not "set[] forth . . . citations" to "pertinent and significant authorities." Minn. R. Civ. App. P. 128.05. And Rekieta's letter likewise fails to cite pertinent and significant authorities; instead, it "presents a new argument and therefore fails to comply with the rule." *Anderson v. Aitkin Pharmacy Services, LLC*, ___ N.W.3d ____, ____, No. A23-0374, 2024 WL 1146503, at *9 n.9 (Minn. App. Mar. 18, 2024) (declining to consider a letter filed after oral argument pursuant to rule 128.05); *see also* Minn. R. Civ. App. P. 128.05 2000 comm. cmt. ("The submission itself is not to contain argument, and a response, if any, is similarly constrained."). We therefore decline to consider the parties' letters regarding pending legislation related to Minnesota's anti-SLAPP statute.

In Minnesota, a district "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. When reviewing a motion for summary judgment, Minnesota courts "do not weigh the evidence or make factual determinations." *McIntosh Cnty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 545 (Minn. 2008). It is true that some Colorado courts have characterized analysis of anti-SLAPP special motions to dismiss as applying a "summary judgment-like" procedure that does not require weighing evidence. *See L.S.S.*, 523 P.3d at 1286; *see also Anderson v. Senthilnathan*, 540 P.3d 1248, 1254 (Colo. App. 2023).

But closer scrutiny reveals that—given the interdivisional split discussed above—some Colorado courts *do* weigh evidence at the second step of adjudicating anti-SLAPP special motions to dismiss, in requiring courts to evaluate plaintiffs' reasonable likelihood of prevailing on their claims. *See Salazar*, 522 P.3d at 248 (agreeing that "review of a special motion to dismiss is similar to a review of the sufficiency of the evidence, in that a court reviewing such a motion is called on to determine whether the plaintiff's allegations and supporting affidavit, viewed in conjunction with any opposing affidavit, meet the legal threshold of establishing a reasonable likelihood of success on the merits"); *see also Make Your Life Epic LLC II*, 98 F.4th at 1327 (noting that "Colorado's anti-SLAPP statute requires courts to consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based and evaluate whether the plaintiff has established that there is a reasonable likelihood that he will prevail on the claim" and

15

concluding that orders "denying anti-SLAPP special motions to dismiss necessarily involve fact weighing" (quotations omitted)).[6]

Here, an application of Colorado's anti-SLAPP statute consistent with *Salazar* would conflict with the animating reasoning of *Leiendecker* by "unconstitutionally instruct[ing the] district court[] to usurp the role of the jury by making pretrial factual findings that can, depending on the findings, result in the complete dismissal of the underlying action." *Leiendecker,* 895 N.W.2d at 635. Moreover, as Quest points out, Colorado's reasonable-likelihood-of-success standard deviates from Minnesota's summary-judgment standard because determining whether there is a genuine issue of material fact requires an analysis far less exacting than an evaluation of whether a plaintiff is reasonably likely to succeed at trial.

Given the importance of Minnesota's constitutional right to a civil jury trial and the conflict between Colorado's reasonable-likelihood-of-success standard and Minnesota's summary-judgment standard, we conclude that applying Colorado's anti-SLAPP statute would require Minnesota to "apply rules of law inconsistent with Minnesota's concept of

---

[6] Also following oral argument, Quest filed a letter notifying us of the United States Court of Appeals for the Tenth Circuit's decision in *Make Your Life Epic LLC II*. Rekieta again filed a letter in reply. To the extent that Quest's "letter . . . state[s] without argument the reasons for the supplemental citation[]"—a "pertinent and significant authorit[y]" that was issued "after oral argument but before decision"—it complies with Minnesota Rule of Civil Appellate Procedure 128.05 and we consider *Make Your Life Epic LLC II* as cited in the text above. Like his previous correspondence, however, Rekieta's letter once again is not constrained to citation of "pertinent and significant authorities" but instead "presents a new argument and therefore fails to comply with the rule." *Anderson*, 2024 WL 1146503, at *9 n.9; *see also* Minn. R. Civ. App. P. 128.05 2000 comm. cmt. We therefore decline to consider Rekieta's responsive letter about *Make Your Life Epic LLC II*.

fairness and equity." *Medtronic, Inc.*, 630 N.W.2d at 455 (quotation omitted). Thus, advancement of the forum's governmental interest favors application of Minnesota law.

### 5. *Application of the better rule of law favors Minnesota law.*

The final factor—application of the better rule of law—"should be applied only when the choice-of-law question remains unresolved after the other factors are considered." *Medtronic, Inc.*, 630 N.W.2d at 455. As discussed above, we have concluded that factors one and two favor application of Colorado law, while factors three and four favor applying Minnesota law. We therefore turn to an analysis of factor five, which we conclude favors Minnesota law.

The better rule of law is "the rule that ma[kes] 'good socio-economic sense for the time when the court speaks.'" *Jepson*, 513 N.W.2d at 473 (quoting Robert A. Leflar, *Conflicts Law: More on Choice-Influencing Considerations*, 54 Calif. L. Rev. 1584, 1588 (1966)). Simply concluding that the law of the forum is better because the forum's legislature enacted the law is impermissible. *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 9 (Minn. App. 2003), *rev. denied* (Minn. Dec. 16, 2003). Otherwise, "the forum law would always be better law and this step in our choice of law analysis would be meaningless." *Jepson*, 513 N.W.2d at 473.

In this case, Colorado law is not the better rule of law. There is an ongoing interdivisional split in the Colorado Court of Appeals on how to treat a plaintiff's likelihood of success at the second step of analyzing Colorado anti-SLAPP special motions to dismiss. And the Colorado Supreme Court has not yet resolved this split. *Make Your Life Epic LLC I*, 659 F. Supp. 3d at 1198. Without definitive guidance on how to apply the Colorado anti-

SLAPP statute, requiring a Minnesota district court to enforce Colorado law does not make good socioeconomic sense for the time when the district court will need to speak. *See Jepson*, 513 N.W.2d at 473. Moreover, because Colorado's constitution does not provide for the right to a civil jury trial, there has been no comparable analysis of the constitutionality of Colorado's anti-SLAPP statute by the Colorado Supreme Court, as there was in *Leiendecker*, 895 N.W.2d at 638. Finally, Minnesota law provides parties a well-established vehicle for pretrial disposition of lawsuits via summary judgment. *See* Minn. R. Civ. P. 56. If Quest's case is truly nonmeritorious, Rekieta can achieve pretrial disposition by pursuing a summary-judgment motion after discovery. Thus, without relying on any preference for the law of the forum based on its enactment by the forum's legislature, *see Danielson*, 670 N.W.2d at 9, we conclude that applying Minnesota law to this case makes "good socio-economic sense," *see Jepson*, 513 N.W.2d at 473 (quotation omitted).

In sum, because factors three, four, and five all favor choosing Minnesota law, the district court did not err in deciding that Minnesota law governs this case.

**Affirmed.**