**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff and Appellant,**

v.

**FARMERS INSURANCE EXCHANGE, Defendant and Appellee.**

**Civ. No. 920313.**

Supreme Court of North Dakota.

Aug. 10, 1993.

Daniel L. Hull, Anderson & Bailly, Fargo, for plaintiff and appellant.

William P. Harrie, Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee.

SANDSTROM, Justice.

We are asked to decide whether North Dakota or Minnesota no-fault insurance law applies in a subrogation action related to a Minnesota accident involving a North Dakota and a Minnesota insured motorist.

American Family Mutual Insurance Company (American Family) appeals from a summary judgment dismissing its declaratory judgment action seeking subrogation from Farmers Insurance Exchange (Farmers). We affirm.

On February 21, 1989, Nidal Omar and LeeAnna Hiestand were involved in an automobile accident in Moorhead, Minnesota.

Omar, a North Dakota resident, was driving a pickup licensed in North Dakota and insured by American Family. Hiestand, a Minnesota resident, was driving an automobile licensed in Minnesota and insured by Farmers. American Family and Farmers are both licensed to do business in North Dakota and Minnesota.

American Family paid Omar no-fault benefits for the injuries he sustained in the accident. American Family then began this declaratory judgment action against Farmers under N.D.C.C. ch. 32–23, seeking a declaration that it is entitled to subrogation under the North Dakota no-fault insurance statutes. *See* N.D.C.C. ch. 26.1–41. The parties stipulated to the facts, and agreed that, if subrogation is available, American Family is entitled to recover $23,-250 from Farmers. On cross-motions for summary judgment, the district court concluded that American Family is not entitled to subrogation and entered judgment dismissing the action. American Family appealed.

The dispositive issue in this case is which state's no-fault statutes apply. The parties agree that Minnesota law governs the underlying tort action between Omar and Hiestand.[1] American Family concedes that subrogation is not available if Minnesota's no-fault statutes apply. *See* Minn.Stat. Ann. § 65B.53. However, American Family asserts that the North Dakota no-fault equitable allocation statute, N.D.C.C. § 26.1–41–17, applies and allows subrogation against Farmers under the facts in this case.[2]

American Family argues that the appropriate choice-of-law rule is the significant-contacts test, and, relying upon *Vigen Construction Co. v. Millers National Insurance Co.*, 436 N.W.2d 254 (N.D.1989), and *Apollo Sprinkler Co. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386 (N.D.1986), asserts that North Dakota has the more significant contacts. Specifically, American Family asserts that its insured was a North Dakota resident, the vehicle was licensed in North Dakota, the policy was entered into in North Dakota, and the parties anticipated that North Dakota law would govern its interpretation. Thus, American Family asserts, *Vigen* and *Apollo* require application of North Dakota law to this subrogation claim.

American Family ignores the crucial distinction between this case and *Vigen* and *Apollo*. The substantive issue in both *Vigen* and *Apollo* was whether there was coverage under the policy. Those cases stand for the proposition that the law of the jurisdiction having the most significant contacts with an insurance policy and with the parties to the policy will govern actions *on the policy. See Vigen* at 256–57; *Apollo* at 390.

This is not an action on the North Dakota policy, but rather is a statutory action for subrogation between two insurers. American Family seeks to apply first-party principles to a third-party action. The contacts cited by American Family would be relevant and controlling if it were suing its insured on the contract. Those contacts, however, are not controlling in determining which state's law governs this statutory subrogation action against an out-of-state insurer which is a stranger to the North Dakota contract.

---

**1.** Omar's tort claim against Hiestand has been settled.

**2.** N.D.C.C. § 26.1–41–17 says that a no-fault insurer's right to subrogation "must be determined ... by binding intercompany arbitration" if the insurers fail to agree. This court recently held in *Carlson v. Farmers Insurance Group*, 492 N.W.2d 579 (N.D.1992), that an arbitrator's decision to apply Minnesota law, rather than North Dakota law, in an insured's claim against his insurance company for underinsured benefits, was a subject for the arbitrator, not the court. Farmers Insurance Exchange did not affirmatively seek to arbitrate, and has not questioned

the propriety of this declaratory judgment action by American Family instead of arbitration. The right to arbitration may be waived, if not timely raised. *See* Anno., *Waiver of or Estoppel to Assert Substantive Right or Right to Arbitrate as Question for Court or Arbitrator*, 26 A.L.R.3d 604 (1969); Anno., *Delay in Asserting Contractual Right to Arbitration as Precluding Enforcement Thereof*, 25 A.L.R.3d 1171 (1969). *See generally* 5 Am.Jur.2d *Arbitration and Award*, §§ 51, 52 (1962). Since a right to arbitrate this question was not raised in this case, we do not address it.

American Family's argument ignores that there are *two* relevant insurance policies here. All of the contacts cited by American Family could be raised, in mirror-image fashion, by Farmers regarding its policy with Hiestand: Hiestand was a Minnesota resident, her vehicle was licensed in Minnesota, the policy was entered into in Minnesota, and the parties anticipated Minnesota law would govern an accident occurring in Minnesota. In essence, all of these factors balance out, and we must look to factors beyond the policies themselves to determine which state's law governs.

■ In applying the significant-contacts test, we would ordinarily look to the five choice-influencing factors identified in *Apollo* at 389, and reiterated in *Vigen* at 256:

"1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum's governmental interests; and, 5) application of the better rule of law."

It is unnecessary to address each factor at length, however, because there is one overridingly significant contact which mandates application of Minnesota no-fault law in this case.

In *Apollo* at 389, we explained the rationale underlying the significant-contacts test:

" ' "Justice, fairness and 'the best practical result' (*Swift & Co. v. Bankers Trust Co.*, 280 N.Y. 135, 141, 19 N.E.2d 992, 995, supra) may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that 'it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context' and thereby allows the forum to apply 'the policy of the jurisdiction "most intimately concerned with the outcome of [the] particular litigation".' (*Auten v. Auten*, 308 N.Y. 155, 161, 124

N.E.2d 99, 102, supra.)" *Babcock v. Jackson, supra* [12 N.Y.2d 473], 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283.' *Issendorf [v. Olson]*, 194 N.W.2d [750], 754 [ (N.D.1972) ]."

We reiterated in *Vigen* at 258, that the law of the jurisdiction whose "interests are more deeply affected by the issues raised" should govern.

From the statutes of both states, we conclude Minnesota has a deeper interest in application of no-fault principles for an accident occurring in that state. No-fault is a territorial form of statutorily-mandated coverage. The Minnesota legislature explicitly stated that the primary purpose of the Minnesota No–Fault Automobile Insurance Act is "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents *within this state....*" Minn.Stat.Ann. § 65B.42(1) (emphasis added). In accordance with this stated public policy, Minn.Stat.Ann. § 65B.50 provides that out-of-state insurance policies are deemed to provide Minnesota no-fault coverage when the vehicle is driven in Minnesota:

"*Insurers' certification of basic coverage*

"Subdivision 1. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall ... file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, except that in the case of nonresident policyholders it need only certify that security is provided with respect to accidents occurring in this state.

"Subd. 2. Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle ... includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle."

The Minnesota courts have held that the "insurer's obligation to make payments to its [non-resident] policyholder under the Minnesota No–Fault Act 'arises from the duties imposed upon it for the privilege of doing business in Minnesota, not its private contract with the insured.'" *Rydberg v. American Family Mutual Insurance Co.,* 453 N.W.2d 67, 68 (Minn.Ct.App.1990) (quoting *Petty v. Allstate Insurance Co.,* 290 N.W.2d 763, 766 (Minn.1980)). Thus, coverage is imposed by Minnesota law under Minn.Stat.Ann. § 65B.50, rather than by contract, when the accident occurs in Minnesota. *See Schoer v. West Bend Mutual Insurance Co.,* 473 N.W.2d 73, 77 (Minn.Ct.App.1991). Minnesota is concerned not only with protecting its own resident insureds, but seeks to require no-fault coverage for all vehicles driven within its borders.

North Dakota law also recognizes the strong territorial nature of no-fault law. N.D.C.C. § 26.1–41–02 contains provisions mandating no-fault coverage when a vehicle is operated within this state. The legislature has also recognized that, when a vehicle insured in North Dakota is operated in another state, that state's no-fault law comes into play. N.D.C.C. § 26.1–41–15(2)(b) acknowledges that another state's statutory no-fault limits may apply when the accident occurs in that state:

"2. If the accident occurs outside this state but in the United States or its possessions or in Canada:

\*   \*   \*   \*   \*   \*

"b. If the limits of no-fault benefits of the applicable jurisdiction exceed the limits provided under this chapter for no-fault benefits, the no-fault benefits are deemed to comply with the limits of the benefits of the laws of the applicable jurisdiction."

---

**3.** North Dakota's statutory limit is $30,000. N.D.C.C. § 26.1–41–01(2). Minnesota's statutory limit is $40,000. Minn.Stat.Ann. § 65B.44(1).

**4.** American Family attempts to bolster its argument that North Dakota no-fault law should apply by asserting that Omar elected to accept North Dakota no-fault benefits under the contract, rather than Minnesota statutory benefits.

Because Minnesota's no-fault limits are higher than North Dakota's,[3] Omar was entitled to collect Minnesota no-fault benefits in this case.[4] *See National Farmers Union Property and Casualty Co. v. Nodak Mutual Insurance Co.,* 528 F.Supp. 1093, 1096 (D.N.D.1981).

Furthermore, the policy issued by American Family expressly provided that it "conforms to any motor vehicle insurance law to which an insured person becomes subject by using a car in any state." (Emphasis deleted). Thus, the policy itself contemplates that the law of another state may apply when the insured vehicle is driven there.

The Commissioner's Prefatory Note to the Uniform Motor Vehicle Accident Reparations Act also recognizes the territorial nature of no-fault coverage:

"The Act applies to any motor vehicle accident occurring within the State without regard to where any involved vehicle is registered or how long it has been in the State. It converts any motor vehicle liability insurance policy, including one issued elsewhere, into a basic reparation policy while the insured vehicle is operated in the State."

Uniform Motor Vehicle Accident Reparations Act, Prefatory Note, 14 U.L.A. 35, 38 (1990).

■ The statutory schemes of North Dakota and Minnesota, as well as the Uniform Act, demonstrate a singular concern with coverage for accidents occurring within the boundaries of that state. Each provides for mandatory coverage when an out-of-state vehicle is driven within the state. The legislatures of North Dakota and Minnesota have recognized that benefits under the Minnesota statute are available when a North Dakota insured is injured in

The stipulation of facts does not indicate that Omar elected to receive North Dakota benefits. Furthermore, the important point for choice-of-law analysis is that the statutes of both states recognize that Omar was *entitled* to receive benefits under the Minnesota statutory scheme. Any election to collect other benefits under his contract with American Family is irrelevant.

a Minnesota accident. Minnesota no-fault law should apply to determine the availability of subrogation when Minnesota no-fault law governs the benefits available to the insured and Minnesota tort law governs the underlying action. We conclude that Minnesota has the more significant contacts with the issue of statutory subrogation for no-fault benefits under the facts in this case.[5] Accordingly, Minnesota no-fault law applies in this case and, as conceded by American Family, subrogation is not available.

The judgment of the district court is affirmed.

VANDE WALLE, C.J., and MESCHKE, LEVINE and NEUMANN, JJ., concur.

---

5. The parties have not cited a single appellate decision discussing choice of law in a similar no-fault subrogation action. American Family relied upon two trial court decisions granting motions for summary judgment. *Melick v. Stanley,* 174 N.J.Super. 271, 416 A.2d 415 (Law Div.1980); *Government Employees Insurance Co. v. Halfpenny,* 103 Misc.2d 128, 425 N.Y.S.2d 212 (Sup.Ct.1980). We find these trial court decisions unpersuasive and decline to follow them because of their lack of cogent legal reasoning and their failure to expressly apply the significant-contacts test and the five choice-influencing factors.