**NODAK MUTUAL INSURANCE COMPANY, petitioner, Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent.**

**No. C3–98–1792.**

Supreme Court of Minnesota.

Jan. 13, 2000.

William P. Harrie, Niles, Hansen & Davies, Ltd., Fargo, ND, for appellant.

Paul R. Aamodt, Aamodt & Lamb, Fargo, ND, for respondent.

## OPINION

BLATZ, Chief Justice.

This case raises the question of whether Minnesota's or North Dakota's no-fault law applies when a Minnesota resident covered by a Minnesota automobile insurance policy is injured in an automobile accident in North Dakota by a North Dakota resident covered by a North Dakota policy. We hold that when all other relevant choice-of-law factors favor neither state's law, the state where the accident occurred has the strongest governmental interest, and that state's law should therefore be applied.

On November 23, 1993, David Blumer of Fargo, North Dakota, and Gracy Morey of Moorhead, Minnesota, were involved in an automobile accident on a bridge approximately one-quarter of a mile into Fargo. Morey, whose car was registered in Minnesota and covered by a Minnesota insurance policy issued by respondent American Family Mutual Insurance Company, was seriously injured in the accident. Blumer's car was registered in North Dakota and covered by a North Dakota insurance policy issued by appellant Nodak Mutual Insurance Company.

American Family paid Morey $6,201.64 in no-fault benefits. Nodak settled with Morey for $25,000, and Morey signed a release stating that "this Release does not release my no-fault carrier, American Family Insurance Group from further obli-

gation to pay no-fault benefits." American Family then requested equitable allocation from Nodak in the amount of $6,201.64 pursuant to the North Dakota no-fault statute, which permits equitable allocation among insurers. The statute states in pertinent part that:

> A basic no-fault insurer may recover no-fault benefits paid to or for the benefit of an injured person from the motor vehicle liability insurer of a secured person if * * * [t]he injured person has sustained a serious injury[.] * * * The right of recovery and the amount thereof must be determined on the basis of tort law * * * by agreement between the insurers involved, or, if they fail to agree, by binding intercompany arbitration under procedures approved by the commissioner.

N.D. Cent.Code § 26.1–41–17 (1995). Nodak does not dispute that if North Dakota law applies, American Family has a right to seek recovery of the no-fault benefits it paid Morey.

In response, Nodak commenced this action seeking a declaratory judgment that Minnesota's no-fault law applies. The Minnesota No–Fault Act gives Minnesota insurers limited subrogation rights for injuries caused to their insureds by the negligence of out-of-state drivers. *See* Minn. Stat. § 65B.53, subd. 2 (1998). One of these limitations is that there can be no subrogation unless the insured receives or is entitled to receive a double recovery. *See id.* The relevant statutory provision states that:

> A reparation obligor paying or obligated to pay basic or optional economic loss benefits is subrogated to the claim for the recovery of damages for economic loss that the person to whom the basic or optional economic loss benefits were paid or payable has against another person whose negligence in another state was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable. *This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.*

*Id.* (emphasis added). American Family does not dispute that its insured has not received and will not receive a double recovery, and thus that subrogation is not available under Minnesota's no-fault law.

In determining whether North Dakota's or Minnesota's no-fault law applied, the district court performed a choice-of-law analysis and concluded that Minnesota's law should govern. Therefore, American Family could not recover its no-fault benefits from Nodak. After performing its own choice-of-law analysis, the court of appeals reversed, holding that North Dakota's no-fault law governed, and therefore that equitable allocation was available to American Family. *See Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.,* 590 N.W.2d 670, 674 (Minn.App.1999). We affirm the court of ·appeals and hold that American Family may seek equitable allocation from Nodak under North Dakota's no-fault law.

## I.

Before a choice-of-law analysis can be applied,[1] a court must determine

1. Nodak argues that choice-of-law analysis is unnecessary here, and that the court need only apply Minnesota law governing subrogation rights to the Minnesota insurer. The cases that Nodak relies on for this proposition do not support it. *See Johnson v. United Services Auto. Ass'n,* 493 N.W.2d 570 (Minn. 1992); *Western Nat'l Mut. Ins. Co. v. State Farm Ins. Co.,* 374 N.W.2d 441 (Minn.1985); *Aguilar v. Texas Farmers Ins. Co.,* 504 N.W.2d 791 (Minn.App.1993). In each of these cases the question was not whether the foreign state's law or Minnesota's law would control, but whether the Minnesota No–Fault Act was intended to apply to the out-of-state policies at issue by imputing an obligation to pay either underinsured motorist or basic economic benefits. *See Johnson,* 493 N.W.2d at

that a conflict exists between the laws of two forums.[2] *See Myers v. Government Employees Ins. Co.*, 302 Minn. 359, 363, 225 N.W.2d 238, 241 (1974). A conflict exists if the choice of one forum's law over the other will determine the outcome of the case. *See id.* at 363, 225 N.W.2d at 241. Here, it is undisputed that under Minnesota law an insurer may not recover no-fault benefits paid to its insured due to an out-of-state accident unless the insured received or will receive a double recovery. Similarly, it is undisputed that on the present facts North Dakota law allows insurers to seek recovery of no-fault benefits payments through equitable allocation. Therefore, as North Dakota law would allow American Family to attempt to recoup its no-fault payments and Minnesota law would not, there is a conflict and a choice-of-law analysis must be applied.

█ Both Minnesota and North Dakota have adopted the significant contacts test for choice-of-law analyses. *See Jepson*, 513 N.W.2d at 470; *Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386, 389 (N.D.1986). The significant contacts test consists of the following choice-influencing factors:

(1) Predictability of results;

(2) Maintenance of interstate and international order;

(3) Simplification of the judicial task;

(4) Advancement of the forum's governmental interest; and

(5) Application of the better rule of law.

*See Jepson*, 513 N.W.2d at 470; *Apollo*, 382 N.W.2d at 389. We will now consider

571–72; *Western*, 374 N.W.2d at 443 n. 4; *Aguilar*, 504 N.W.2d at 794. In each case the answer was that Minnesota law did not impute Minnesota benefits, so no conflict was created with the foreign laws. *See id.* Thus, the issue was one of interpretation of the Minnesota statute rather than choice of law. Here, the application of the Minnesota law is clear and the question is whether it prevails over the North Dakota law with which it conflicts. Choice-of-law analysis is therefore necessary.

the facts of this case in light of these factors.

█ The first factor, predictability of results, represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping. *See* Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law*, 41 N.Y.U. L.Rev. 267, 282–83 (1966). In addition, this factor acts to preserve the parties' justified contractual expectations. *See Jepson*, 513 N.W.2d at 470. However, "[p]redictability of results applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Myers*, 302 Minn. at 365, 225 N.W.2d at 242. "[T]he unplanned nature of automobile accidents lessens the importance of predictability of results in automobile insurance cases." *Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 833 (Minn. 1979).

Nodak argues that because Minnesota insurers write their policies and calculate their premiums in accordance with the Minnesota No–Fault Act, their subrogation rights should be governed by that Act. This argument is unpersuasive as it would effectively eliminate choice-of-law analysis by simply applying the law of the state where the policy was written; and as two policies are involved, the decision would turn on which party sued first.

The court of appeals determined that predictability favors neither state. *See Nodak*, 590 N.W.2d at 673. The court based this determination on its view that this is a statutory subrogation case and not

**2.** After determining that there is a conflict, a court must next ensure that each state has significant contacts so that its law can be constitutionally applied. *See Jepson v. General Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn.1994). Here, neither party disputes that both states have significant contacts, and both the district court and court of appeals concluded that both states have significant contacts. *See Nodak*, 590 N.W.2d at 672–73.

an action on an insurance policy, and therefore the interests of the insureds are not affected because the outcome will not effect the certainty of their contractual expectations. *See id.* We agree with the court of appeals: automobile accidents are not consensual transactions, nor is this a contract case, and therefore predictability favors neither forum.

The second factor, maintenance of interstate and international order, is

> primarily concerned with whether the application of Minnesota law would manifest disrespect for North Dakota's sovereignty [or vice versa] or impede the interstate movement of people and goods. An aspect of this concern is to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong.

*Jepson,* 513 N.W.2d at 471. The court of appeals concluded that North Dakota has the stronger governmental interest because the accident occurred there, and that interest would be subverted if Minnesota law governed. We conclude, however, that both states have an equal interest as evidenced by the fact that both have laws directly pertaining to no-fault benefits recovery on the present facts. This factor, therefore, favors neither state's law.

The third factor, simplification of the judicial task, has not been given much weight in this court's precedent. *See, e.g., Jepson,* 513 N.W.2d at 472 (stating that this "is not a significant factor in this case because the law of either state could be applied without difficulty"); *Hime,* 284 N.W.2d at 833 (stating that "[e]ither [state's] law could be applied without practical difficulty" and thus "this consideration is not significant in this case"). These cases imply that this factor is primarily concerned with the clarity of the conflicting laws. As the conflicting laws at issue are relatively clear in that there is no dispute that recovery is allowed under one but not the other, this factor favors neither state's law.

The fourth factor is concerned with "which choice of law most advances a significant interest of the forum." *Jepson,* 513 N.W.2d at 472. Nodak argues, and the district court agreed, that this factor favors application of Minnesota law. This conclusion is based on the premise that while Minnesota has no interest in allowing its insurers to recover no-fault benefits from out-of-state insurers – as evidenced by the limited right of subrogation granted by subdivision 2 – Minnesota does have a strong interest in *not* allowing its insurers to recover no-fault benefits from out-of-state insurers. This is because the premiums charged by Minnesota insurers are calculated to include the no-fault coverage required by the No–Fault Act, and therefore Minnesota insurers are only providing benefits for which their insureds have already paid. In essence, Nodak argues that allowing American Family to subrogate would provide it with a windfall. However, Nodak fails to recognize that, as with the factors already discussed, a mirror-image argument can be made in support of applying North Dakota's law: if North Dakota's equitable allocation provision does not govern this case, Nodak will be able to avoid paying American Family money that it might otherwise have to pay through equitable allocation, and consequently could receive a windfall.

In contrast to the district court's ruling, the court of appeals determined that this factor favors application of North Dakota law because the accident occurred in North Dakota. *See Nodak,* 590 N.W.2d at 674. In making this determination, the court of appeals relied on a factually similar North Dakota Supreme Court decision, *American Family Mutual Insurance Co. v. Farmers Insurance Exchange,* 504 N.W.2d 307 (N.D.1993). In *Farmers,* a North Dakota resident and a Minnesota resident were involved in an accident in Minnesota. *See id.* at 307–08. The North Dakota resident was covered by a North

Dakota policy and the Minnesota resident by a Minnesota policy. *See id.* The North Dakota insurer paid its insured no-fault benefits and then brought a declaratory judgment action to determine if it could recover those benefits from the Minnesota insurer, whose insured was at fault, under North Dakota's equitable allocation provision. *See id.* at 308.

The North Dakota Supreme Court recognized the conflict between North Dakota's equitable allocation provision and Minnesota's grant of a limited subrogation right. *See id.* at 308. Accordingly, it applied the significant contacts test. *See id.* at 309. The court determined that the governmental interest factor – the fourth factor – was overridingly important because the no-fault statutes of both North Dakota and Minnesota evidenced a strong governmental interest in providing coverage for accidents within their own state borders. *See id.* at 309–10. The North Dakota Supreme Court therefore held in *Farmers* that Minnesota law applied because the other choice-influencing factors favored neither state's law, and the accident occurred in Minnesota. *See id.* at 309.

Supporting the North Dakota Supreme Court's conclusion is the fact that both states' no-fault statutes provide that all insurance policies, wherever issued, are required to provide no-fault coverage while the covered vehicles are within the state. *See* Minn.Stat. § 65B.50 (1998); N.D. Cent.Code § 26.1–41–02 (1995). Minnesota's No–Fault Act clearly sets forth as one of its purposes the goal of relieving "the severe economic distress of uncompensated victims of automobile accidents *within this state*" by mandating no-fault coverage. Minn.Stat. § 65B.42, subd. 1 (1998) (emphasis added). In addition, North Dakota's no-fault statute recognizes that another state's no-fault coverage limits may apply when a vehicle insured in North Dakota is involved in an out-of-state accident, and therefore implies that the statute's primary concern is in-state accidents.

*See* N.D. Cent.Code § 26.1–41–15(2)(b) (1995). The North Dakota Supreme Court's reasoning is persuasive, and we believe it to be correct. We therefore hold that when all other relevant choice-of-law factors favor neither state's law, the state where the accident occurred has the strongest governmental interest; accordingly, the law of the state where the accident occurred should be applied.

Nodak argues that the court of appeals' adoption of the reasoning in *Farmers* heralds a return to the doctrine of *lex loci,* which holds that "the happening of an accident in any particular forum establishe[s] that the law of the place of the accident [will] apply." *Milkovich v. Saari,* 295 Minn. 155, 157–58, 203 N.W.2d 408, 410 (1973). However, this argument is unpersuasive as both this court and the North Dakota Supreme Court have rejected *lex loci* in favor of the significant contacts approach to choice-of-law cases. *See id.* at 162, 203 N.W.2d at 412; *Issendorf v. Olson,* 194 N.W.2d 750, 756 (N.D.1972). Moreover, as it pointed out in a later case, the North Dakota Supreme Court's analysis in *Farmers* was neither a departure from the significant contacts test nor a return to *lex loci. See Daley v. American States Preferred Ins. Co.,* 587 N.W.2d 159, 163–64 (N.D.1998). Rather, in *Farmers* the court simply concluded that given each state's strong governmental interest in providing coverage for accidents within its borders, where all other relevant choice-influencing factors balance out, the forum with the greater interest is the forum where the accident occurred. *See id.; Farmers,* 504 N.W.2d at 309–11.

Regarding the fifth factor, application of the better rule of law, we note that this court has not placed any emphasis on this factor in nearly 20 years and conclude that it is likewise unnecessary to reach it here. Therefore, as the strongest governmental interest factor here favors application of North Dakota law, and the other relevant

factors favor neither state's law, North Dakota law should apply.

Affirmed.