# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-0406

Carley Pesente,
Appellant,

vs.

Minnesota Life Insurance Company,
Respondent.

**Filed October 7, 2024**
**Reversed and remanded**
**Cochran, Judge**

Ramsey County District Court
File No. 62-CV-23-730

Katherine L. MacKinnon, Law Office of Katherine L. MacKinnon, P.L.L.C., St. Paul, Minnesota (for appellant)

Molly R. Hamilton Cawley, Terrance J. Wagener, Jacob Elrich, Messerli Kramer, Minneapolis, Minnesota (for respondent)

Considered and decided by Cochran, Presiding Judge; Frisch, Judge; and Reilly, Judge.[*]

## SYLLABUS

1.    Connecticut law, not Minnesota law, governs the enforceability of an insured's designation of a spouse as a beneficiary under a group life-insurance policy when the policy was issued in Connecticut and the insured lived in Connecticut, notwithstanding

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

that the couple's marriage was dissolved by a Minnesota court after the spouse moved to the state.

2.      When deciding a choice-of-law question involving interpretation of a group life-insurance policy, the Restatement (Second) of Conflict of Laws § 192 cmt. h (Am. L. Inst. 1971) does not supersede the analysis based on the choice-influencing factors set forth in *Milkovich v. Saari*, 203 N.W.2d 408 (Minn. 1973).

**OPINION**

**COCHRAN**, Judge

This case requires us to decide whether Minnesota law or Connecticut law governs the enforceability of a beneficiary designation in a group life-insurance policy. Minnesota law automatically revokes the beneficiary designation of a spouse upon dissolution of a marriage, except in limited circumstances. Connecticut law does not.

Appellant Carley Pesente's former spouse lived in Connecticut and designated Pesente as her beneficiary under a group life-insurance policy issued to her Connecticut employer. She did not change that designation after Pesente moved to Minnesota and a Minnesota court dissolved their marriage. Following the death of Pesente's former spouse, respondent Minnesota Life Insurance Company refused to pay Pesente the death benefit under the policy. Pesente sued Minnesota Life for breach of contract. The district court applied Minnesota law and granted summary judgment in favor of Minnesota Life on the breach-of-contract claim. On appeal, Pesente argues that Connecticut law, not Minnesota law, governs whether Pesente is entitled to the death benefit as the designated beneficiary

2

under the policy. We conclude that Minnesota choice-of-law principles require application of Connecticut law under the facts of this case. We therefore reverse and remand.

**FACTS**

The facts are undisputed. Minnesota Life is an insurance company, domiciled in Minnesota. Minnesota Life issued a group life-insurance policy to the South Windsor Public School District, a school district in Connecticut. The policy provides benefits to the school district's employees. The applicable policy language states that Minnesota Life "will pay the death benefit to the beneficiary or beneficiaries" that are "named by an insured." An insured can request to change their beneficiary designation. If the sole named beneficiary dies before the insured, the policy lists other persons to whom Minnesota Life will pay the death benefit. The list includes surviving parents and the personal representative of the insured's estate. The policy does not contain a choice-of-law provision, but it does specify that it was "issued and delivered in the state of Connecticut."

Philippa Scott was a school-district employee who was insured under the policy. In September 2014, Scott designated her wife, Pesente, as her sole named beneficiary on a written form filed with the school district. The couple wed in Connecticut a month before Scott's designation. They lived together in Connecticut for approximately one year as a married couple before separating. Pesente later moved to Minnesota while Scott remained in Connecticut. In November 2016, Pesente and Scott, representing themselves, filed a joint petition and proposed judgment for marriage dissolution with a Minnesota district court. The petition proposed a division of assets and debts. The district court adjudicated the petition, entered judgment, and dissolved the marriage in November 2016. Neither the

3

petition nor the judgment addressed the policy. In August 2021, Scott died at her home in Connecticut. Prior to her death, she never requested to change her beneficiary designation under the policy.

After Scott's death, Pesente submitted a claim to Minnesota Life for the death benefit under the policy. Minnesota Life did not pay the death benefit to Pesente, but instead paid it to Scott's mother. Minnesota Life paid the death benefit to Scott's mother based on its position that Scott's designation of Pesente as the beneficiary was automatically revoked by operation of Minnesota law when the couple divorced, and that Scott's mother was the contingent beneficiary entitled to the death benefit.

Pesente brought this action in Minnesota district court, alleging that Minnesota Life breached its contract by declining to pay the death benefit to Pesente. In her complaint, she alleged that Connecticut law governs the enforceability of Scott's beneficiary designation under the policy and requires that Scott's designation of Pesente be honored. Minnesota Life disagreed. Minnesota Life moved for summary judgment, arguing that Minnesota law, not Connecticut law, governs the legal question and that Scott's designation of Pesente as her beneficiary was automatically revoked by Minnesota's revocation-on-divorce statute. *See* Minn. Stat. § 524.2-804 (2022). In response, Pesente argued that Connecticut law applies to the question and that she remained the beneficiary under Connecticut law, which does not have a revocation-on-divorce statute.

The district court granted Minnesota Life's motion for summary judgment. The district court first determined that there is a conflict between Minnesota law and Connecticut law and that either state's law may be constitutionally applied. The district

4

court then applied the five-factor analysis utilized by Minnesota courts to resolve the choice-of-law dispute. Balancing these factors, the district court concluded that Minnesota law applies based on its determination that one factor—advancement of the forum's governmental interest—favors Minnesota law and outweighs the other four factors. As a result, the district court applied Minnesota's revocation-on-divorce statute and concluded that Scott's designation of Pesente as the beneficiary under the policy was revoked by operation of law upon dissolution of their marriage. Based on that determination, the district court granted summary judgment to Minnesota Life.

Pesente appeals.

## ISSUE

Does Minnesota law or Connecticut law govern the enforceability of a spousal-beneficiary designation in a group life-insurance policy issued to a Connecticut employer whose insured Connecticut employee designated her spouse as a beneficiary before their marriage was dissolved in Minnesota?

## ANALYSIS

This case presents a choice-of-law issue. A choice-of-law issue exists when a "set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify . . . application of the law of more than one jurisdiction." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307 (1981). Here, the choice-of-law issue arises in the context of the district court's grant of summary judgment. On appeal from a grant of summary judgment, we "determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *St. Matthews Church of God & Christ v. State*

5

*Farm Fire & Cas. Co.*, 981 N.W.2d 760, 764 (Minn. 2022) (quotations omitted); *see also* Minn. R. Civ. P. 56.01. Our review of the district court's legal conclusions is de novo. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012). "Choice-of-law questions are questions of law and are reviewed de novo." *Schumacher v. Schumacher*, 676 N.W.2d 685, 690 (Minn. App. 2004).

When analyzing a choice-of-law question, we first consider if an "actual conflict" exists such that the outcome of the case will be different depending on which state's law applies. *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994). Second, we decide "whether the law of both states can be constitutionally applied." *Id.* Finally, if there is an "actual conflict" and both states' laws can be constitutionally applied, we analyze the "five choice influencing factors" applied by Minnesota courts to determine which state's law governs. *Id.* at 469-70.

Before turning to our analysis, we briefly clarify the nature of the action before us. Pesente brought a breach-of-contract action under the policy. In her complaint, Pesente alleged that Minnesota Life breached the policy by refusing to pay the death benefit to Pesente, the designated beneficiary. Minnesota Life disputes Pesente's claim, asserting that Pesente is no longer a beneficiary under the policy because Scott's designation of Pesente was automatically revoked by Minnesota's revocation-on-divorce statute. This contract dispute regarding the death benefit under the policy arises as a consequence of the marriage dissolution, but the dissolution proceeding itself is not at issue here. It is undisputed that the dissolution judgment did not address the policy and that Scott did not thereafter change her beneficiary designation. The question here is what state's law applies

6

to interpret the policy and determine whether Scott's beneficiary designation is enforceable, in view of these undisputed facts. Therefore, in performing our analysis, we focus on the policy, not the dissolution proceeding.

Based on our review of the undisputed facts as applied to the choice-of-law question before us, we first conclude that there is an actual conflict between Minnesota and Connecticut law. We next conclude that the law of both states can be constitutionally applied to determine the enforceability of the beneficiary designation under the policy. We then conduct the five-factor choice-influencing analysis and conclude that the factors require application of Connecticut law, not Minnesota law. Finally, we discuss how the Restatement (Second) of Conflict of Laws § 192 cmt. h (Am. L. Inst. 1971) supports our analysis but does not control it.

I.    **There is a conflict between Connecticut law and Minnesota law and either may be constitutionally applied.**

We begin our analysis by considering whether there is an actual conflict between Minnesota law and Connecticut law and whether each state has sufficient contacts such that either state's law may be constitutionally applied. We conclude that both prerequisites are satisfied.

*A.    Actual Conflict*

A conflict exists between the laws of two forums "if the choice of one forum's law over the other will determine the outcome of the case." *Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000) (citing *Myers v. Gov't Emps. Ins. Co.*,

225 N.W.2d 238, 241 (Minn. 1974)).[1]  If one state's law would enforce a disputed provision in an insurance policy and another's would not, there is an actual conflict. *Jepson*, 513 N.W.2d at 469; *see also Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 454 (Minn. App. 2001) (identifying difference between states' laws in enforcement of noncompete agreements as an actual conflict).  If there is no conflict, there is no choice-of-law issue. *Vetter v. Sec. Cont'l Ins. Co.*, 567 N.W.2d 516, 521-22 (Minn. 1997).

This case presents an actual conflict.  Minnesota has a revocation-on-divorce statute. Minn. Stat. § 524.2-804.  Under that statute, if a person designates their spouse as the beneficiary of an insurance policy, that designation is automatically revoked upon dissolution of their marriage, with a limited exception not relevant here.  *Id.*, subd. 1(1) (revoking beneficiary designations of a spouse "in a governing instrument" upon the dissolution); Minn. Stat. § 524.1-201(26) (2022) (defining "governing instrument" to include insurance policies).  The effect of the revocation under section 524.2-804 is that the provisions of the insurance policy "are given effect as if the former spouse died immediately before the dissolution."  Minn. Stat. § 524.2-804, subd. 2.  But under Connecticut law, courts will honor the beneficiary named in the policy, even if a spouse is named and the marriage is subsequently dissolved. *Williams v. Sistare*, 417 A.2d 369, 370

---

[1] Minnesota law addresses procedural and substantive choice-of-law issues differently. *Fleeger v. Wyeth*, 771 N.W.2d 524, 527 (Minn. 2009).  A choice-of-law issue involves substantive law if the choice "will substantially affect the result." *Gate City Fed. Sav. & Loan Ass'n v. O'Connor*, 410 N.W.2d 448, 450 (Minn. App. 1987), *rev. denied* (Minn. Oct. 21, 1987).  Because we conclude that the conflict-of-law issue here would determine the outcome, we apply Minnesota's substantive choice-of-law analysis.

(Conn. Super. Ct. 1980); *Martineau v. Martineau*, No. CV 990062209S, 2000 WL 966160, at *5-6 (Conn. Super. Ct. June 20, 2000). Scott named Pesente as the beneficiary under the policy before the dissolution of their marriage, and she died without revoking that designation. As both parties acknowledge, Minnesota law would revoke Scott's beneficiary designation and Connecticut law would not. Thus, an actual conflict exists.[2]

## B.     Constitutionality

We next consider "whether the law of both states can be constitutionally applied." *Jepson*, 513 N.W.2d at 469. A state's law may be constitutionally applied to a dispute if the state has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* (quoting *Hague*, 449 U.S. at 312-13). A choice of law may be unconstitutional if it "rest[s] exclusively on the presence of one nonsignificant forum contact," such as "a postoccurrence change of residence." *Hague*, 449 U.S. at 309-10.

---

[2] Minnesota Life argues that Minnesota law must apply because it is the home state of both Pesente and Minnesota Life. In support of its argument, Minnesota Life relies on *Cargill, Inc. v. Evanston Ins. Co.*, 642 N.W.2d 80 (Minn. App. 2002), *rev. denied* (Minn. June 26, 2002). In that case, an Illinois insurer provided liability insurance to Cargill, a Minnesota company. *Id.* at 82, 89. The policy covered all of Cargill's properties that have exposure to environmental damages claims. *Id.* at 89. Cargill brought a declaratory-judgment action seeking insurance coverage related to a property it owned in Georgia. *Id.* at 82-83, 89. The district court applied Georgia law to resolve an insurance-coverage question. *Id.* at 89. On appeal, we excluded Georgia law and limited our choice-of-law analysis to Illinois and Minnesota—"the home states of the parties to the litigation." *Id.* at 90. In explaining our decision, we noted that the policy was signed in Minnesota, issued by an Illinois insurance company, and covered all of Cargill's properties that have exposure to environmental damages claims. *Id.* at 89-90. Here, Minnesota Life issued the policy to a Connecticut school district, which insured a resident of Connecticut. *Cargill* does not preclude our consideration of Connecticut law under these circumstances.

9

The parties agree that Minnesota law can be constitutionally applied because there are sufficient contacts with Minnesota, and we concur. But Minnesota Life argues that Connecticut law cannot be constitutionally applied because Connecticut "has no contacts creating a state interest in Pesente's and Scott's divorce" and "has no interest in the application of" Minnesota's revocation-on-divorce statute.[3] This argument is misguided. The divorce is not "the occurrence or transaction giving rise to the litigation." *Id.* at 308. As discussed above, the litigation arises out of the policy and which state's law applies to determine the enforceability of Scott's designation of Pesente as her beneficiary under the policy. And, as Minnesota Life concedes, Connecticut has sufficient significant contacts to create a state interest in the policy. Minnesota Life delivered the policy to a Connecticut school district to provide group life insurance to the district's employees, many of whom likely reside in Connecticut. And relevant to this litigation, Scott lived, worked, and died in Connecticut. *See id.* at 313-14, 318-19 (explaining that working in a state and residing in a state are each important state contacts). This is not a case that "rest[s] exclusively on the presence of one nonsignificant forum contact." *Id.* at 309. Consequently, Connecticut law may be constitutionally applied, and we proceed to our choice-of-law analysis.

---

[3] Pesente argues that the constitutional argument is not properly before us on appeal because the district court rejected it, and Minnesota Life did not file a notice of related appeal under Minn. R. Civ. App. P. 106. But a respondent need not file a notice of related appeal to argue that the record supports the district court's conclusion, even if the argument "may involve an attack upon the reasoning of the [district] court or an insistence upon matters overlooked or ignored by it." *Hunt by Hunt v. Sherman*, 345 N.W.2d 750, 753 n.3 (Minn. 1984) (explaining that a respondent may make such an argument "without taking a cross-appeal"). Thus, we evaluate Minnesota Life's constitutional argument on its merits.

## II.    The significant-contacts test favors Connecticut law.

Minnesota has adopted "the significant contacts test for choice-of-law analyses." *Nodak*, 604 N.W.2d at 94.  This test examines the following five choice-influencing factors: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Jepson*, 513 N.W.2d at 470.  A court need not determine that each factor favors one state's law; some factors may be simply neutral.  *See id.* at 472 (concluding that the third factor was insignificant "because the law of either state could be applied without difficulty").  And a court need not give equal weight to each factor.  *See id.* ("On the facts of this case, however, our choice is influenced more by our analyses of predictability and maintenance of the interstate order than it is by our governmental interest . . . .").  It is more important to "wrestle with each situation anew" and "be true to the method rather than to seek superficial factual analogies between cases." *Id.* at 470.

### A.    Predictability of Result

The first factor is the predictability of result.  This factor embodies the "ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same." *Nodak*, 604 N.W.2d at 94.  Predictability of result is valuable in "consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Medtronic*, 630 N.W.2d at 454.  In a contract case, courts consider "what the parties' reasonable expectations should have been at the time of contracting." *Jepson*, 513 N.W.2d at 471.  For insurance policies, this is because "[t]he heart of the bargain

11

between the insurer and the insured is the coverage the insured purchased." *Id.* at 470. Courts also consider whether the choice of law would "lead to unpredictable results." *Kolberg-Pioneer, Inc. v. Belgrade Steel Tank Co.*, 823 N.W.2d 669, 673 (Minn. App. 2012), *rev. denied* (Minn. Jan. 15, 2013).

Pesente argues that the school district, Minnesota Life, and Scott all would have expected that Connecticut law would determine the beneficiary under the policy. Minnesota Life counters that the stipulated dissolution judgment, and not the policy, is at issue. As discussed above, this action concerns which state's law applies to determine the enforceability of a beneficiary designation under the policy, not which state's law applies to the dissolution judgment. Therefore, we agree with Pesente that it is appropriate to focus our analysis of the predictability factor on the policy itself.

Based on our review of the record, we conclude that this factor strongly favors Connecticut law. The policy is an agreement between Minnesota Life and the school district. Accordingly, the reasonable expectations of Minnesota Life and the school district are most relevant. *See Jepson*, 513 N.W.2d at 471 (analyzing the reasonable expectations of the parties to the contract based on factors existing at the time of contracting). The record shows that Minnesota Life and the school district would have reasonably expected that Connecticut law would apply at the time of contracting. Minnesota Life issued the policy to the school district, which is located in Connecticut. While the policy did not include a choice-of-law provision, it does specify that it was "issued and delivered in the state of Connecticut." And it is reasonable to assume that many of the school district's employees, like Scott, would be Connecticut residents. Thus, the record reflects that the

parties to the insurance contract—the school district and Minnesota Life—would have reasonably expected that Connecticut law would govern the policy, including designation of a beneficiary under the policy and the effect of a marriage dissolution on that designation.

Though less relevant, Scott would also have expected that Connecticut law would apply. Connecticut is the state of the employer who provided insurance coverage under the policy to Scott. Scott also lived, worked, married Pesente, and died in Connecticut. Under these circumstances, Scott would also have reasonably expected that Connecticut law would apply. *Cf. Jepson*, 513 N.W.2d at 471 (determining it is predictable that an insurance contract would be subject to the law of the state where the insureds resided, where their vehicles were titled, and that determined the premium rates). In sum, application of Connecticut law would enhance the predictability of result by working "to preserve the parties' justified contractual expectations." *Nodak*, 604 N.W.2d at 94.

Conversely, Minnesota Life's position that Minnesota law should govern would lead to less predictable results. Minnesota Life is essentially arguing that the law of the state where the marriage was dissolved should control whether the designation of a spouse as the beneficiary under a group life-insurance policy is revoked due to the dissolution. Such an approach would lead to unpredictable results because the effect of the marriage dissolution on the beneficiary designation would vary based on the law of the state where the dissolution occurred. In contrast, application of Connecticut law, the law of the state where the policy was issued, would be much more predictable because all spousal-

13

beneficiary designations under the policy for this Connecticut employer would be subject to the same law. Thus, this factor strongly favors application of Connecticut law.

B.      *Maintenance of Interstate and International Order*

The second factor, maintenance of interstate and international order, is mainly concerned with "whether the application of Minnesota law would manifest disrespect for [another state's] sovereignty or impede the interstate movement of people and goods." *Jepson*, 513 N.W.2d at 471. Courts of different states aim to "maintain a coherent legal system" by "striv[ing] to sustain, rather than subvert, each other's interests in areas where their own interests are less strong." *Id.* We "may also consider whether or not application of Minnesota law will encourage forum shopping." *Kolberg-Pioneer*, 823 N.W.2d at 674 (quoting *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 49 (Minn. 1979), *aff'd*, 449 U.S. 302 (1981)). "[M]aintenance of interstate order is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Myers*, 225 N.W.2d at 242.

We have already concluded that both states have sufficient contacts with and interest in the facts and issues being litigated. And we see no evidence that Pesente engaged in forum shopping by suing Minnesota Life in Minnesota. To the contrary, because she cannot recover the death benefit under Minnesota law, it seems unlikely that forum shopping motivated Pesente's decision to bring the lawsuit in Minnesota. *Cf. Jepson*, 513 N.W.2d at 471-72 (finding evidence of forum shopping when appellant sued in a state whose law allowed him to recover a larger sum after commencing and settling suit in a state whose law would allow him to recover a lesser sum); *Kolberg-Pioneer*, 823 N.W.2d

14

at 674 (noting that Minnesota's indemnification law likely resulted in action being initiated in Minnesota). Accordingly, this factor is neutral.[4]

### C.    Simplification of the Judicial Task

The third factor, simplification of the judicial task, "is often considered insignificant because courts can as easily apply another state's laws as their own." *Medtronic*, 630 N.W.2d at 455. This factor "is generally neutral so long as the laws of both states are straightforward and clear." *Kolberg-Pioneer*, 823 N.W.2d at 674.

Pesente claims this factor is either neutral or favors Connecticut law, reasoning that both state's laws are clear but applying the beneficiary designation in the policy may be slightly simpler. Minnesota Life counters that Minnesota's revocation-on-divorce statute is simpler because it "creates an easily applied bright-line rule." Minnesota Life argues Connecticut's law is more complicated.

In Connecticut, the courts have adopted a general rule that "a change of beneficiary of an insurance policy can be effected only by following the procedure prescribed by the

---

[4] We are not persuaded otherwise by Minnesota Life's argument that it would disrespect both states to "revive" the beneficiary designation after the dissolution judgment and the Minnesota statute "automatically revoked [Scott's] designation." Minnesota Life's argument relies on the assumption that the parties' dissolution judgment "revoked Scott's designation." But the dissolution judgment does not mention the policy, Scott's beneficiary designation, or the revocation-on-divorce statute. And Minnesota Life cites no authority that provides that Minnesota's revocation-on-divorce statute must be enforced as if it were explicitly part of the dissolution judgment. While the Minnesota statute would revoke Scott's beneficiary designation under Minnesota law, we are not convinced that the automatic revocation became part of the dissolution judgment that other states must respect. Because the dissolution judgment does not mention the beneficiary designation, applying Connecticut law and enforcing the beneficiary designation would not violate the judgment's terms.

15

policy." *Williams*, 417 A.2d at 370. Under this general rule, Connecticut law will honor the beneficiary named in the policy, even if a spouse is named and the marriage is subsequently dissolved. *Id.* But Connecticut law also recognizes an exception to the general rule when there is substantial compliance with the policy procedures for changing a beneficiary. Under that exception, "the owner of a life insurance policy will have effectively changed the beneficiary if the following is proven: (1) the owner clearly intended to change the beneficiary and to designate the new beneficiary; and (2) the owner has taken substantial affirmative action to effectuate the change in the beneficiary." *Engelman v. Conn. Gen. Life Ins. Co.*, 690 A.2d 882, 888 (Conn. 1997) (emphasis omitted).

Minnesota Life argues that this two-part inquiry under Connecticut law is not as easy to apply as Minnesota's law because it is fact intensive. Here, however, the two-part inquiry is not at issue because there is no evidence or argument that Scott intended to change her beneficiary designation from Pesente to another person. Thus, Connecticut's general rule regarding a beneficiary designation is the relevant Connecticut law for purposes of our analysis of this factor.

We conclude that this factor is neutral because a Minnesota court could easily apply either Minnesota's law or Connecticut's law. *See Medtronic*, 630 N.W.2d at 455. Both Minnesota's revocation-on-divorce statute and Connecticut's general rule are straightforward and clear. And, even if Connecticut's two-part inquiry were at issue, a Minnesota court could easily apply that standard as well. In fact, Minnesota courts have experience applying a standard similar to Connecticut's two-part inquiry. Before section 524.2-804 was enacted, Minnesota followed a two-part inquiry much like Connecticut's to

determine whether a beneficiary was changed: "(1) whether there was intent to change the beneficiary by the insured; and (2) whether the insured acted affirmatively or otherwise did substantially all possible to show intention whether or not she complied with policy change of beneficiary provisions." *Larsen v. Nw. Nat'l Life Ins. Co.*, 463 N.W.2d 777, 780 (Minn. App. 1990), *rev. denied* (Minn. Feb. 6, 1991). Accordingly, this factor is neutral.

*D.     Advancement of the Forum's Governmental Interest*

The fourth factor considers "which choice of law most advances a significant interest of the forum." *Nodak*, 604 N.W.2d at 95 (quotation omitted). A state's governmental interest is "discoverable from its strongly felt social or legal policy." *Myers*, 225 N.W.2d at 244 (quoting Robert A. Leflar, *Conflicts Law: More on Choice-Influencing Considerations*, 54 Calif. L. Rev. 1584, 1587 (1966)). This factor also is concerned with ensuring "that our courts not be called upon to determine issues under rules which, however[] accepted they may be in other states, are inconsistent with our own concept of fairness and equity." *Milkovich v. Saari*, 203 N.W.2d 408, 417 (Minn. 1973).

Minnesota Life argues that applying section 524.2-804 would advance Minnesota's governmental interests. To aid our understanding of our state's interests underlying section 524.2-804, we look to the supreme court's explanation of how revocation-on-divorce statutes rose to prominence:

> Historically, under the common law, a divorce did not operate to revoke a testamentary disposition in favor of a former spouse. Because this led to unsatisfactory results as a divorced spouse generally was no longer a natural object of the testator's bounty, many states enacted statutes revoking provisions to a former spouse in a will. Recognizing that the legal system has long used default rules to resolve estate

17

> litigation in a way that conforms to decedents' presumed intent, rising rates of divorce by the 1980s led almost all states to enact revocation-on-divorce statutes, such as section 524.2-804, which treat an individual's divorce as voiding a testamentary bequest to a former spouse. These statutes rest on a judgment about the typical testator's probable intent.

*In re Est. of Tomczik*, 992 N.W.2d 691, 695-96 (Minn. 2023) (quotations and citations omitted). Put simply, "the [Minnesota] Legislature concluded that the average [person] does not want [her] ex[-spouse] inheriting what [s]he leaves behind." *Id.* at 699 (quotation omitted). In doing so, the legislature did not require this result in all cases; in fact, Minnesota's revocation-on-divorce statute allows parties to exempt the statute's operation if they do so in "express terms." Minn. Stat. § 524-2.804, subd. 1.

Pesente contends that a different Minnesota interest recognized in *Jepson* should control our decision: the interest "that people should get the benefit of the contracts they enter into." *Jepson*, 513 N.W.2d at 472. Pesente argues that this state governmental interest supports application of Connecticut law, rather than Minnesota's revocation-on-divorce statute, because Connecticut law "would be consistent with honoring the benefit of the bargain between the [school district] and the insurer and the expectations of the insured."

In *Jepson*, the supreme court faced a choice between Minnesota and North Dakota law in determining an insurance-coverage dispute involving an automobile policy. *Id.* at 468-69. The policy was entered into in Minnesota but contained a North Dakota endorsement for multiple vehicles registered in North Dakota. *Id.* Minnesota law would have voided the "anti-stacking" provision in the policy and allowed the insured to recover

18

a larger sum for uninsured-motorist benefits, whereas North Dakota law would have enforced the anti-stacking provision. *Id.* at 469. In analyzing the governmental-interest factor, the supreme court noted that "Minnesota places great value in compensating tort victims" but recognized that Minnesota "also believe[s] that people should get the benefit of the contracts they enter into, nothing less and nothing more." *Id.* at 472. Ultimately, the supreme court determined that North Dakota law should apply based on its analysis of other factors. *Id.* at 472-73.

Considering the two competing state governmental interests before us, we conclude that Minnesota's interests are most advanced by the application of Minnesota's revocation-on-divorce statute, but not overwhelmingly so. In enacting the revocation-on-divorce statute, Minnesota "rest[ed] on a judgment" that it is fair and equitable to revoke a beneficiary designation to an ex-spouse upon dissolution of a marriage. *See Tomczik*, 992 N.W.2d at 695-96 (quotations omitted) (describing judgments inherent to revocation-on-divorce statutes generally). This judgment is not absolute, as the statute also leaves room for parties to opt out of its operation if they do so in "express terms." Minn. Stat. § 524-2.804, subd. 1. And, as Pesente correctly notes, Minnesota has a general interest in ensuring people get the benefit of a contract. But because Minnesota has specifically expressed that the designation of a spouse as a beneficiary should generally be revoked on marriage dissolution, we conclude that this factor slightly favors applying Minnesota law rather than Connecticut law.

19

*E.    Application of the Better Rule of Law*

The better rule of law is "the rule that ma[kes] 'good socio-economic sense for the time when the court speaks.'" *Jepson*, 513 N.W.2d at 473 (quoting Leflar, *supra*, at 1588). Generally, this factor is applied "only when the other four factors are not dispositive."[5] *Schumacher*, 676 N.W.2d at 691-92.

Here, to the extent we need to address this factor, we conclude this factor favors neither state's law. Connecticut and Minnesota have made policy choices concerning which default rules apply to spousal-beneficiary designations in insurance policies upon dissolution of a marriage. "Sometimes different laws are neither better nor worse in an objective way, just different." *Jepson*, 513 N.W.2d 473. That is the case here.

*F.    Balancing of the Factors*

Under the facts and circumstances of this case, we conclude that the first factor (predictability of results) strongly favors the application of Connecticut law whereas the fourth factor (advancement of the forum's governmental interests) slightly favors the application of Minnesota law. The other three factors are neutral. We therefore conclude that Connecticut law governs the choice-of-law issue before us regarding the enforceability of Scott's designation of Pesente as her beneficiary under the policy.

---

[5] The better-rule-of-law factor has not been given any emphasis for many years. *See Nodak*, 604 N.W.2d at 96; *Boatwright v. Budak*, 625 N.W.2d 483, 490 (Minn. App. 2001), *rev. denied* (Minn. July 24, 2001).

**III.     The Restatement (Second) of Conflict of Laws Confirms Our Analysis.**

Finally, while Pesente contends that Minnesota's choice-influencing factors favor application of Connecticut law, she also argues that the Restatement (Second) of Conflict of Laws (Am. L. Inst. 1971) (the Restatement) should be applied to decide the choice-of-law question before us instead of the balancing of the choice-influencing factors discussed above. According to Pesente, "when a case falls within a specific factually aligned rule" from the Restatement, Minnesota courts do not apply the choice-influencing factors. Pesente refers us to section 192, comment h, of the Restatement (Comment h) as a factually aligned rule. Comment h provides the following regarding a group life-insurance policy: "rights against the insurer are usually governed by the law which governs the master policy" between the employer and the insurer, which "will usually be the state where the employer has [its] principal place of business." Restatement (Second) of Conflict of Laws § 192 cmt. h (Am. L. Inst. 1971). Here, that is Connecticut.

Comment h is guided by the need for predictability in the context of a group life-insurance policy, given the large number of insureds. Comment h notes that, under a group life-insurance policy, it "is desirable that each individual insured should enjoy the same privileges and protection." *Id.* We find this reasoning persuasive. We therefore conclude that Comment h informs and supports the application of Connecticut law under the facts of this case, but we reject a strict application of Comment h *in place* of the choice-influencing factors. Rather, we look to the flexible and time-honored choice-influencing factors as recognized by our supreme court.

21

In 1973, the Minnesota Supreme Court adopted Professor Robert Leflar's choice-influencing factors to resolve choice-of-law issues. *Milkovich*, 203 N.W.2d at 410-13. By adopting the choice-influencing factors, the supreme court replaced the "increasingly criticized" and "mechanical" lex loci rule. *Id.* at 412 (quotations omitted). In contract cases, the lex loci rule would apply "the law of the place of the contractual transaction." *Davis v. Furlong*, 328 N.W.2d 150, 152 (Minn. 1983). By contrast, the choice-influencing factors are a "methodology and not a rule." *Milkovich*, 203 N.W.2d at 416. The factors "were not intended to spawn the evolution of set mechanical rules but instead to prompt courts to carefully and critically consider each new fact situation and explain in a straightforward manner their choice of law." *Jepson*, 513 N.W.2d at 470. One fact alone cannot control which state's law applies because that would "effectively eliminate choice-of-law analysis." *Nodak*, 604 N.W.2d at 94. Instead, we must "wrestle with each situation anew" and "be true to the method rather than . . . seek superficial factual analogies between cases." *Jepson*, 513 N.W.2d at 470.

Adopting a mechanical rule for group life-insurance policies, such as Comment h, would be inconsistent with Minnesota's usual approach to choice-of-law questions. We are not persuaded otherwise by the caselaw relied on by Pesente. The only precedential case cited by Pesente, *State v. Heaney*, is not apposite. 689 N.W.2d 168 (Minn. 2004). In that criminal-vehicular-operation case, the supreme court addressed a conflict between Minnesota and Wisconsin law "concerning the admissibility of evidence protected by the physician-patient relationship." *Id.* at 170. The supreme court relied on a section of the Restatement governing evidentiary privileges to resolve the conflict because the choice-

22

influencing-factors analysis did "not comport well with the special concerns presented by the criminal setting." *Id.* at 175 (citing Restatement (Second) of Conflict of Laws § 139 (Am. L. Inst. 1971)). The supreme court also recognized that the physician-patient privilege giving rise to the choice-of-law question had both substantive and procedural aspects which made it a poor fit for solely applying the choice-influencing-factors analysis. *Id.* at 174. Neither of those concerns are present here, given that this case involves a civil matter which presents a choice of substantive law.

Furthermore, Pesente points us to, and we are aware of, no precedent applying Comment h of the Restatement instead of Minnesota's usual choice-influencing factors to decide a choice-of-law question involving an insurance policy.[6] Rather, our supreme court precedent in the insurance context supports the application of the choice-influencing factors. *See Jepson*, 513 N.W.2d at 470. Therefore, we decline to apply Comment h to decide the choice-of-law issue before us, but we recognize that Comment h supports our

_____

[6] Pesente's reliance on three nonprecedential opinions is misguided. These opinions do not control our decision because nonprecedential opinions are not binding authority except as law of the case, res judicata, or collateral estoppel. Minn. R. Civ. App. P. 136.01, subd. 1(c). And two of the opinions cited by Pesente refer to the Restatement as support for the choice-influencing-factors analysis, but do not supplant it. *Cannon Cochran Mgmt. Servs., Inc. v. Duncan*, No. A08-0807, 2009 WL 982262, at *5 (Minn. App. Apr. 14, 2009) (reasoning that the Restatement provided "[f]urther support" for the conclusion the court reached through a choice-influencing-factors analysis), *rev. denied* (Minn. June 16, 2009); *Montpetit v. Allina Health Sys., Inc.*, No. C2-00-571, 2000 WL 1486581, at *2-4 (Minn. App. Oct. 10, 2000) (same). Finally, as to the third, we do not find that opinion persuasive because it does not explain its decision to forgo the choice-influencing-factors analysis. *Fischer v. AMEX Life Assurance Co.*, No. C7-92-406, 1992 WL 251388, at *1-2 (Minn. App. Oct. 6, 1992). And the case is factually dissimilar; the policy had an express choice-of-law provision, which the court analyzed alongside Comment h, and the policy was not provided by an employer. *Id.*

23

conclusion based on the choice-influencing factors that Connecticut law, not Minnesota law, applies.

## DECISION

Because there is an actual conflict between Minnesota law and Connecticut law and the law of either state may be constitutionally applied, the district court did not err by analyzing the choice-influencing factors. But because those factors favor the application of Connecticut law under the undisputed facts of this case, the district court erred by applying Minnesota law to determine whether Pesente is entitled to the death benefit as Scott's designated beneficiary under the group life-insurance policy issued to her Connecticut employer. We therefore reverse the district court's summary-judgment dismissal of Pesente's claims, and we remand to the district court to apply Connecticut law to determine whether Minnesota Life breached its duties under the policy by declining to pay the death benefit to Pesente.

**Reversed and remanded.**